[No. 21831-3-II. Division Two. October 2, 1998.]
FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*,
v. GORDON LAUTENBACH, *Defendant*, GLENNA SMITH,
*Individually and as Personal Representative,*
*Appellant.*

*Ben Shafton* of *Morse & Bratt*, for appellant.

*Norman C. Dick* and *Mark S. Brumbaugh* of *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.*, for respondent.

ARMSTRONG, J. — Mathew Lautenbach died in a three-car accident on July 5, 1993. Glenna Smith and Gordon Lautenbach, the divorced parents of Mathew, accepted $450,000 from the insurance company for the at-fault driver in settlement of their individual claims and the claim on behalf of Mathew's estate. Glenna and Gordon agreed to a division of the $450,000. Glenna then arbitrated her claim and the estate claim with Farmers, which provided underinsured motorists coverage; Glenna was awarded $300,000 and the estate was awarded $215,000. The principal issue is whether Farmers is entitled to a credit for the total amount received by Gordon and Glenna or only the amount Glenna received as a result of her agreed division with Gordon. We hold that because Glenna and Gordon made an unallocated

settlement with the liability carrier and then allocated the proceeds between themselves, Farmers is entitled to a credit for the entire unallocated settlement.

## FACTS

On July 5, 1993, Mathew Lautenbach was killed in a three-car accident caused by Andrea Webb. Candace Boettcher was also killed in the accident, and Mary Kay Baranske and Robert Baranske were seriously injured. Webb was insured by USF&G with liability limits of $1,500,000. USF&G deposited the policy limits in the registry of the superior court in exchange for releases from all claimants.

Mathew Lautenbach was the son of Glenna Smith and Gordon Lautenbach, who had been divorced since 1980. Glenna had custody and Gordon exercised infrequent visitation. At the time of Mathew's death, Gordon was in arrears on his child support payments in an amount of $58,500.

Glenna was appointed as the personal representative for Mathew's estate. She hired counsel to pursue a wrongful death action on behalf of the estate and her claim for destruction of the parent-child relationship. Gordon Lautenbach hired his own attorney to represent his interests in the suit.

The Smiths had an automobile insurance policy with Farmers Insurance Company of Washington. The policy included personal injury protection (PIP) and underinsured motorists (UIM) benefits in the amount of $100,000. Gordon was also insured under the Farmers policy for his claim arising from Mathew's death. The policy had PIP coverage of $2,000, which Farmers paid towards the funeral expenses. Farmers, however, did not require Smith to sign a document permitting the $2,000 to be deducted from any UIM recovery as contemplated by the insurance contract.

In February 1995, USF&G paid its liability limit of $1,500,000 into the court registry. All claimants agreed to a preliminary distribution of $600,000, with the Lautenbach claimants receiving $200,000. Later in February, Glenna

received $59,813.53 from the $200,000 in satisfaction of a judgment she had obtained for back child support. The judge ordered that the $59,813.53 would be "debited from any moneys found to be due and owing to GORDON LAUTENBACH arising out of the claims that he may have in connection with the death of Mathew Lautenbach," including his claims for loss of the parent/child relationship and his share of Mathew Lautenbach's Estate.

Ultimately all claimants agreed to a division of the $900,000 remaining from USF&G's settlement. Glenna, Gordon, and the estate received an additional $250,000 (for a total of $450,000). Gordon later negotiated an additional $23,800 from the other claimants.

In June 1995, Gordon released both his loss of parent/ child relationship claim and his share of Mathew Lautenbach's estate (including all UIM claims against Farmers) in exchange for $98,800. Thus, Gordon received a total of $158,613.53 ($98,800 plus the $59,813.53 child support payment).

After settling with Gordon, Glenna arbitrated her claim and the estate's claim with Farmers. The arbitrators set the damages to the estate at $215,000, and the damages to Glenna for loss of the parent/child relationship at $300,000. The award was confirmed in superior court, but the court declined to set the credit to which Farmers was entitled. Farmers then filed this action for a declaratory judgment. Both sides moved for summary judgment. The superior court granted Farmers' motion for summary judgment, although the court held that the UIM obligation was only $32,500. The parties disagree as to the proper method of calculating Farmers' credit for the liability payment made by USF&G.

The underpinnings of Glenna's proposed calculation are two: (1) the allocation that she, Gordon and the estate agreed upon after receiving the $450,000 is controlling; (2) she, Gordon, and the estate should be treated separately

and the agreed sums allocated to Gordon and the estate[1] should be deducted to arrive at the amount of liability proceeds available for Glenna's individual claim. According to Glenna's calculation, she has received only approximately $170,000 from the liability payment and she is entitled to Farmers' limit of $100,000 to satisfy her award of $300,000.

Farmers, on the other hand, contends that it is entitled to a credit for the entire amount paid to the Lautenbach claimants—$473,800 plus its $2,000 PIP payment. If so, Farmers owes only $39,200, the difference between the total award of $515,000 and the $475,800. Farmers also argues that Glenna is estopped from claiming that more than $98,800 should be allocated to Gordon because that was the amount Glenna's attorney told them would be allocated to Gordon.

### A. Offset of Tortfeasor Payments in UIM Claims

 UIM coverage is a "floating layer" above the available limits of the tortfeasor's liability policy. *Groves v. Progressive Cas.*, 50 Wn. App. 133, 136, 137, 747 P.2d 498 (1987); *see also Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985). Generally, a UIM carrier is entitled to offset the amount of the tortfeasor's liability limits. RCW 48.22.030(1); *Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 287, 818 P.2d 608 (1991). Where two or more injured persons make claims against the liability limits, the amounts paid to earlier claimants reduce the available limits to later claimants. *See, e.g., Groves*, 50 Wn. App. at 134. But, where two claimants make a single, unallocated settlement and then agree to allocate the proceeds amongst themselves, the UIM carrier is entitled to offset the full amount of the unallocated settlement against the UIM claim of one of the claimants. *Cramer v. PEMCO Ins. Co.*, 67 Wn. App. 563, 566, 842 P.2d 479 (1992).

In *Cramer*, husband and wife claimants entered into a

---

[1]Glenna would allocate $215,000 to the estate claim and then deduct this amount from the $450,000 to calculate her individual shortfall.

$25,000 unallocated settlement with a tortfeasor in exchange for a full release of all claims. The settlement was the limit of the tortfeasor's liability policy, and the Cramers reserved their rights to pursue UIM claims. In addition, PEMCO—the UIM insurer—had paid $8,227 in PIP benefits.

At the UIM arbitration, the panel awarded the Cramers $10,000 in medical expenses, $15,000 in general damages, and $5,000 in loss of consortium for a total of $30,000. PEMCO thereafter refused further payment under UIM coverage, claiming that between the tortfeasor settlement and the PIP payments the Cramers had already been paid more than the arbitrators' award. The Cramers sued, contending that the wife's loss of consortium claim was not included in the settlement with the tortfeasor's insurer.

The court rejected that argument, stating:

> The independent nature of [the wife's] consortium claim and the lack of negotiations as to that claim in arriving at the settlement with Farmers are immaterial. Having signed a release of all claims, separate and community, for an unallocated $25,000 lump sum, the Cramers cannot now insist on imputing an allocation based on the arbitrators' award so as to enlarge the obligations of the UIM carrier.

*Cramer*, 67 Wn. App. at 566 (footnote omitted).

Similarly, Glenna seeks to enlarge the obligation of Farmers by allocating certain amounts to Gordon and the estate. The problem with allowing these agreed allocations to control the amount due under UIM coverage is best illustrated here by the child support payment Glenna received from Gordon's share of the liability settlement. Glenna agreed to allocate approximately $60,000 to Gordon from the initial $200,000 settlement, but the $60,000 was immediately paid to Glenna in satisfaction of Gordon's delinquent child support. If Glenna and Gordon had been unrelated claimants, negotiating at arms length with each other and the other claimants, Glenna would presumably have contested this amount. But because of their past rela-

tionship, the payment to Gordon actually worked to Glenna's benefit. Thus, instead of contesting this payment to Gordon, Glenna supported it. And to allow Glenna to reduce the amount of liability coverage available to her by this payment is to allow the manipulation of the UIM obligation prohibited by *Cramer*.[2]

But there is one distinction between this case and *Cramer*. In *Cramer*, both the husband and wife went to arbitration and the claims of both were evaluated. Thus, the court was aware that the Cramers had been paid more than the arbitration values placed on their claims. Here, Gordon's claim was not arbitrated; the arbitration awards covered only the claims of Glenna and the estate. The question is whether this distinction precludes application of the *Cramer* rule. We hold that it does not.

Gordon's claim was not arbitrated because Glenna and Gordon agreed that he would make no claim to the UIM proceeds. In exchange, Glenna agreed that Gordon would receive a certain share of the liability proceeds. The benefit to Glenna is that she became the only claimant to the UIM proceeds. If her award and the estate award had exceeded the liability settlement by more than $100,000, she would be entitled to Farmers' limits. And she would not have had to share those limits with Gordon. The risk to Glenna is that she did not have the value of Gordon's claim to present against the UIM limits. But that was the agreement she made. We conclude that the *Cramer* rule applies.

*Cramer*, however, does not allow Farmers to offset the full $473,800. *Cramer* applies only to the unallocated settlement—$450,000. Gordon negotiated the remaining $23,800 on his own and for his own benefit. That amount is properly deducted from the liability proceeds, similar to the amounts paid to the other claimants.

---

[2]Glenna's proposed allocation of $215,000 to the estate is another example.

In view of our decision on offset of the unallocated settlement, we do not reach Farmers' estoppel argument.

## B. PIP Offset

Glenna and the estate assert that Farmers should not be allowed an offset against UIM benefits for the $2,000 in funeral benefits Farmers paid under PIP coverage. The argument is based on the following clause in Farmers' PIP benefits coverage:

> No payment shall be made under [PIP] coverage unless the **insured person** . . . shall have agreed in writing that the amount of such payments shall be applied toward settlement of any claim or satisfaction of any award entered in his favor under underinsured motorists coverage in this or any other policy of the Farmers Insurance Group of Companies.

Glenna contends that because Farmers did not require such a writing, it waived the right to offset PIP payments against UIM benefits.

■ A waiver is the intentional and voluntary relinquishment of a known right, *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954), and can arise from an insurance company's failure to insist on procedures listed in its insurance contract. *See, e.g., Reynolds v. Travelers' Ins. Co.*, 176 Wash. 36, 46-48, 28 P.2d 310 (1934). Whether or not PIP benefits can be offset against UIM benefits is governed by the written insurance contract. *Barney v. Safeco Ins. Co.*, 73 Wn. App. 426, 429, 869 P.2d 1093 (1994), *overruled on other grounds by Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 946 P.2d 388 (1997).

■ Farmers contends that the general "right to recover" clause in the insurance contract permits an offset even though Farmers did not enforce the specific clause in the PIP section.[3] A "right to recover" clause similar to the one here permits an insurer to offset PIP benefits. *Keenan v.*

---

[3]The "right to recover" clause in the contract reads: "When a person has been paid **damages** by us under this policy and also recovers from another, we

*Industrial Indem. Ins. Co.*, 108 Wn.2d 314, 317-19, 738 P.2d 270 (1987).

We agree with Farmers. While the provision cited by Smith permits Farmers to insist on a writing before paying the PIP benefit, nothing in this clause prevents Farmers from recovering such payments under a different clause of the contract. Thus, Farmers waived only its right to require a written agreement to repay, not its right to recover the PIP payment.

## C. Attorneys' Fees

 Glenna Smith and the Estate request an award of attorneys' fees, for both the action below and on appeal, under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Under *Olympic*, an insured who must sue to obtain coverage is entitled to attorneys' fees. However, *Olympic* was limited by *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 876 P.2d 896 (1994), which held that the insured could recover attorneys' fees only where coverage was disputed, rather than the value of an insured's claim. Here, Farmers did not dispute Glenna's UIM coverage, but only the amount due under such coverage. Such disputes do not entitle Glenna to attorneys' fees. *Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 516-18, 887 P.2d 449 (1995).

In conclusion, Farmers is entitled to an offset of $452,0000—the amount of the unallocated settlement plus the $2,000 PIP payment—against the total award of $515,000.[4]

We remand for entry of a judgment in accordance with this opinion.

BRIDGEWATER, A.C.J., concurs.

---

shall be reimbursed to the extent of our payment after that person has been fully compensated for his or her loss."

[4]The difference should be divided between Glenna, individually and the estate in proportion to their respective awards. Glenna is, apparently, the sole beneficiary of the estate and so such division may not affect the actual disbursement of funds.

Morgan, J. (concurring) — In general, I agree with the majority's reasoning and result. I write separately because I want to emphasize how peculiar this case is.

As the majority holds, a court should not allow co-claimants to affect a UIM carrier's obligations by unilaterally allocating the proceeds of liability insurance among themselves.[5] Accordingly, a court should treat as a single, combined entity those co-claimants who elect to receive joint payments from the liability carrier.[6] In doing this, however, a court generally should include the same claimants in the minuend as in the subtrahend.[7] For example, if a court includes claimants A and B in the subtrahend, it should include claimants A and B in the minuend. If a court includes claimants A, B, and C in the subtrahend, it should include claimants A, B, and C in the minuend.

The peculiarity inherent in this case is that the majority includes claimants A, B, and C (Glenna, the estate and Gordon) in the subtrahend, but only claimants A and B (Glenna and the estate) in the minuend. This is correct only because Glenna and Gordon agreed that his claim would not be presented to the arbitrators for valuation. If his claim had been presented, we should today use a subtrahend that represents the liability coverage available to A, B, and C (Glenna, the estate, and Gordon), and a minuend that represents the combined amounts legally owed to A, B, and C (Glenna, the estate, and Gordon).

Reconsideration denied March 9, 1999.

Review denied at 138 Wn.2d 1012 (1999).

---

[5]*Cramer v. PEMCO Ins. Co.*, 67 Wn. App. 563, 566, 842 P.2d 479 (1992); *cf. Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 286, 818 P.2d 608 (1991) (UIM carrier not liable merely because claimant voluntarily settles with tortfeasor).

[6]*Cramer*, 67 Wn. App. at 566.

[7]For definitions of minuend and subtrahend, *see Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 510-11, 887 P.2d 449 (1995).