2004 ME 33

**Nicole LEVINE**

v.

**STATE FARM MUTUAL AUTO-MOBILE INSURANCE CO.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 26, 2003.
Decided: March 8, 2004.

---

Sumner H. Lipman, Esq., Gregg D. Bernstein, Esq., Lipman, Katz & McKee, P.A., Augusta, for plaintiff.

William J. Kelleher, Esq., Taylor D. Fawns, Esq., Law Offices of William J. Kelleher, P.A., Augusta, for State Farm.

Paul S. Douglass, Esq., Lewiston, for Prudential.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, and LEVY, JJ.

Dissent: RUDMAN and CALKINS, JJ.

SAUFLEY, C.J.

[¶ 1] We are called upon here to determine whether Maine's uninsured/underinsured vehicle coverage laws require underinsured vehicle policies to supplant available tortfeasor insurance coverage that is not timely sought by the injured insured. State Farm Mutual Automobile Insurance Company appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) concluding that Nicole Levine, who was injured by the driver of an underinsured vehicle, was entitled to recover from State Farm, the underinsured vehicle insurance carrier of the driver in whose vehicle she was riding, when the coverage held by the tortfeasor became unavailable to Levine because of the passage of time before she filed her claim. It is undisputed that the tortfeasor's coverage was less than the State Farm policy limits and that State Farm is responsible for that amount of underinsurance. Because we conclude that State Farm is only liable for the amount by which the State Farm coverage exceeded the insurance held by the tortfeasor, we vacate the judgment.

## I. BACKGROUND

[¶ 2] In August 1992, Nicole Levine, a passenger in a motor vehicle operated by Michael Fisher, was injured when a vehicle negligently operated by William Kruzynski collided head-on with Fisher's automobile, causing Levine damages later determined by a jury to total $100,000.

[¶ 3] At the time that Kruzynski injured Levine, he was insured through a North East Insurance Company policy, which provided liability coverage of $50,000 per person. Fisher and Levine were each insured by Fisher's State Farm policy, which contained a provision for uninsured/underinsured vehicle coverage in the amount of $100,000 per person. Levine was also insured by a Prudential Property and Casualty Insurance Company policy, which provided uninsured/underinsured vehicle coverage in the amount of $100,000 per person. Coverage under that policy is not at issue here.

[¶ 4] Kruzynski died approximately one year after the accident and no probate proceedings were filed concerning his estate until March 1999, nearly six years after his death, when Levine filed a petition for formal adjudication of intestacy and appointment of a personal representative. In her petition, Levine requested that the court appoint her, as a creditor, to serve as personal representative of Kruzynski's estate. The Probate Court dismissed Levine's petition, holding that the three-year limit for commencing probate proceedings had expired, and she was therefore barred from obtaining relief for her injuries from Kruzynski or his estate.[1]

[¶ 5] On January 18, 2001, more than eight years after the accident, Levine filed a direct cause of action against State Farm and Prudential, seeking recovery for the damages resulting from the 1992 automobile accident pursuant to each company's underinsured vehicle coverage.[2] The parties have never disputed that Kruzynski's vehicle qualified as an "uninsured motor vehicle" pursuant to the State Farm policy because the $50,000 bodily injury liability limit contained in his policy with North East was less than the $100,000 uninsured/underinsured vehicle limit Fisher carried in his policy with State Farm.[3] Moreover, Kruzynski's negligence undisputedly caused the motor vehicle accident and, as a result, Levine was "legally entitled" to collect damages from him.[4] Thus, the sole issue presented at the jury trial held in the Superior Court concerned the amount of Levine's total damages resulting from the accident, which the jury calculated to be $100,000.

1. We subsequently affirmed the judgment entered in the Probate Court. *Estate of Kruzynski*, 2000 ME 17, ¶¶ 4, 7, 744 A.2d 1054, 1055–56 (holding Levine's petition for appointment as the personal representative was untimely pursuant to 18–A M.R.S.A. § 3–108(a) (1998)).

2. Prior to trial, the parties agreed that State Farm was the primary insurer and that Prudential would only provide underinsured vehicle coverage for damages in excess of State Farm's $100,000 policy limit.

3. Pursuant to the State Farm policy, an "uninsured motor vehicle" includes "a land motor vehicle, the ownership, maintenance or use of which is ... insured or bonded for bodily injury liability at the time of the accident; but ... the limits of liability are less than the limits you carry for uninsured motor vehicle coverage under this policy." (Emphasis omitted.)

4. The State Farm policy provides, in relevant part: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." (Emphasis omitted.)

[¶ 6] Following the jury verdict, Levine filed a motion pursuant to M.R. Civ. P. 58 requesting that the court enter judgment in her favor in the amount of the jury verdict (plus costs) against State Farm, and in an amount equal to the prejudgment interest against Prudential.[5] State Farm opposed Levine's motion, arguing that it only owed her the $50,000 by which the State Farm underinsured vehicle coverage exceeded Kruzynski's bodily injury coverage. State Farm also maintained that a "limits of liability" clause in its policy authorized an offset by the amount of Kruzynski's coverage limit because Kruzynski was "legally liable" for Levine's bodily injury due to his undisputed negligence in causing the accident.[6]

[¶ 7] The Superior Court granted Levine's Rule 58 motion and concluded that State Farm was responsible not only for the undisputed $50,000 by which Kruzynski was underinsured, but also for the $50,000 of Kruzynski's available insurance, which had become unavailable due only to the passage of time. This appeal followed.

## II. DISCUSSION

■ [¶ 8] Underinsured and uninsured vehicle coverage is intended to provide financial compensation in instances where the tortfeasor " 'is uninsured' " or " 'is financially unable to furnish adequate compensation for the injuries caused in the accident.' " *Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359, 362 (Me.1982) (quoting *Wescott v. Allstate Ins.*, 397 A.2d 156, 166 (Me.1979)). It was not intended to supplant the tortfeasor's coverage. Consistent with that purpose, the State Farm underinsured vehicle policy at issue expressly provides that it does not cover any amounts covered by "the total of the bodily injury limits of all other vehicle liability policies . . . that apply to any person . . . legally liable for such bodily injury." (Emphasis omitted.) Thus, the plain language of Levine's coverage precludes recovery from State Farm for the amount by which Kruzynski was actually insured.

[¶ 9] Levine argues, nonetheless, that the policy contravenes Maine's uninsured/underinsured vehicle statute, 24–A M.R.S.A. § 2902 (2000 & Supp.2003). Therefore, the question presented is whether the statute mandates coverage by the underinsured vehicle coverage carrier of the amount that would have been paid by the tortfeasor, but for the injured party's failure to seek recovery.

■ [¶ 10] Contrary to Levine's contentions, section 2902(4) does not require that the underinsured vehicle coverage carrier make all payments due from any insurer and then seek recovery from the tortfeasor's insurer. 24–A M.R.S.A. § 2902(4) (2000). It merely allows recovery from

---

5. After the jury returned its verdict, Prudential also filed a motion for judgment in its favor arguing that it was entitled to a judgment because it was the secondary insurer and Levine's damages were within State Farm's policy limit. The court denied Prudential's motion, holding the $100,000 verdict plus prejudgment interest exceeded State Farm's policy limit. Prudential has not appealed from the court's decision.

6. The policy's limits of liability clause reduces the amount State Farm must pay when an uninsured motorist injures an insured:

2. Any amount payable under this coverage shall be reduced:
a. by any amount paid or payable to or for the insured:
(1) for bodily injury under the liability coverage . . .
. . . .
b. the total of the bodily injury limits of all other vehicle liability policies or bonds that apply to any person or organization legally liable for such bodily injury.
(Emphasis omitted.)

other responsible parties "[i]n the event" that the underinsured vehicle coverage carrier has made payment to the insured. *Id.* The underinsured vehicle coverage carrier has the right pursuant to statute to pay its insured and then seek recovery from any "legally responsible" party.[7] *Id.* Nothing in the statutes, however, mandates that approach.[8]

[¶ 11] Moreover, the entire statutory scheme makes it evident that underinsured vehicle coverage is in the nature of gap coverage, not a substitute for primary coverage. In mandating uninsured vehicle coverage in Maine, the Legislature intended to ensure coverage when an injured party is "legally entitled to recover damages from owners or operators of uninsured, *underinsured* or hit-and-run motor vehicles." 24–A M.R.S.A. § 2902(1) (2000) (emphasis added). There exists no indication of legislative intent to ensure coverage when and to the extent that the tortfeasor, in fact, has insurance. Because Kruzynski was only covered to a maximum of $50,000 per person, and Levine's damages totaled $100,000, Kruzynski was "underinsured" in the amount of $50,000. He was not, however, underinsured by the full $100,000.

To the contrary, that $50,000 coverage was available to Levine. *See Greenvall v. Me. Mut. Fire Ins. Co.*, 1998 ME 204, ¶ 8, 715 A.2d 949, 952–53 (joining jurisdictions that hold an insured may be "legally entitled to recover" without first obtaining a judgment against an uninsured motorist). Accordingly, the $50,000 available from Kruzynski's carrier cannot be considered an amount by which Kruzynski's vehicle was underinsured. *See* 24–A M.R.S.A. § 2902(1) (stating that an underinsured vehicle is one that has less *coverage* than the injured party's uninsured vehicle coverage).

[¶ 12] Other states have reached similar conclusions. "Generally, [an underinsured vehicle coverage] carrier is entitled to offset the amount of the tortfeasor's *liability limits*." *Farmers Ins. Co. of Wash. v. Lautenbach*, 93 Wash.App. 671, 963 P.2d 965, 967 (1998) (emphasis added). This is consistent with our conclusion that underinsured vehicle coverage "fills the gap left by an underinsured tortfeasor" and is designed to " 'permit the insured injured person the same recovery which would have been available to him had the tortfeasor been *insured* to the same extent as the

---

7. The language of subsection 6 of section 2902 further refutes Levine's contention that the Legislature did not intend to allow an underinsured vehicle coverage carrier to reduce its liability by the amount of other insurance. 24–A M.R.S.A. § 2902(6) (Supp.2003). Subsection 6 sets out the method for calculating payments owed by the underinsured vehicle coverage carrier when multiple persons are entitled to recover under the tortfeasor's policy. *Id.* After first subtracting the amount actually recovered from the tortfeasor's policy, "[t]he amount of underinsured motor vehicle coverage must be further reduced by the amount by which [the tortfeasor's liability limit] exceeds all payments from that coverage to all persons legally entitled to recover damages from [the tortfeasor's policy]." *Id.* As in subsection 1, the Legislature here permits an underinsured vehicle coverage carrier to offset an amount that may exceed what the

insured *actually* recovered under a tortfeasor's policy. *Id.* § 2902(1) & (6) (2000 & Supp.2003).

8. The statute provides that if a person with uninsured vehicle coverage recovers from a responsible third party, her insurer is entitled to the proceeds:

> In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

24–A M.R.S.A. § 2902(4) (2000).

injured party.'" *Tibbetts v. Me. Bonding & Cas. Co.*, 618 A.2d 731, 734 (Me.1992) (emphasis added) (quoting *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me.1983)).

[¶ 13] We conclude, therefore, that State Farm is not responsible for the amount Levine could have obtained pursuant to Kruzynski's policy; rather, State Farm is responsible for paying $50,000—the extent to which Kruzynski's vehicle was underinsured.[9] *See* 24-A M.R.S.A. § 2902(1); *Tibbetts*, 618 A.2d at 734. Nothing in the statute requires a contrary result.

[¶ 14] Finally, if we were to accept Levine's argument that the underinsured vehicle coverage carrier may not offset from its responsibility the amount of insurance held by the tortfeasor, the economic risks of injury in motor vehicle accidents would shift entirely to the underinsured vehicle coverage carrier. The expense involved in providing uninsured/underinsured vehicle coverage would increase, the cost to consumers would increase, and an insurance product originally required by the Legislature to protect against those who fail to carry adequate insurance would be treated as if it were the primary source of coverage notwithstanding the tortfeasor's own coverage. The Legislature neither mandated nor intended such a result.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment against State Farm in the amount of $50,000, with interest and costs, if any, to be determined by the court.

RUDMAN, J., with whom CALKINS, J., joins, dissenting.

[¶ 15] Because I disagree with the way the Court frames and resolves the issue before us today, I respectfully dissent. The issue is whether State Farm's uninsured/underinsured vehicle policy provides less coverage than is required by Maine's uninsured/underinsured vehicle law. The Court, focusing on legislative intent, holds that State Farm's policy does not impermissibly limit coverage. Upon review of the plain language of the statute, however, it is clear that the insurance contract provides less coverage than is required under the law.

[¶ 16] The Court fairly recites the facts, however, I would add that Levine, being only fifteen years of age at the time of the accident, normally would be entitled to more time to bring her suit than an adult would have been. Moreover, because the tortfeasor did not die in Maine, and his death was not reported in Maine newspapers, there is no reason to believe that Levine was negligent in not bringing her suit earlier. Unaware that the tortfeasor had passed away, Levine believed that she was well within the appropriate statute of limitations for bringing suit for her injuries. I mention these facts not because they bear on the interpretation of the insurance contract or the statute, but rather to refute the implication that the equities operate against Levine.

[¶ 17] I accept the Court's conclusion that the language of State Farm's insurance contract denies Levine's coverage, and turn to the issue of whether the policy's language violates the provisions of Maine's uninsured/underinsured vehicle law. We assume that an insurance policy incorporates all the relevant mandatory provisions of the statute pursuant to which the policy was drafted. *Skidgell v. Universal Underwriters Ins. Co.*, 1997 ME 149, ¶ 7, 697 A.2d 831, 833. When the

---

9. Because it is not before us, we do not address the interplay between the State Farm and Prudential policies related to prejudgment interest.

provision of a particular insurance policy conflicts with a statutory mandate, however, the statute controls. *Id.*

[¶ 18] Statutory interpretation always begins with the letter of the law. The express language of section 2902 is clear and unambiguous. Title 24-A, section 2902(4) is the statutory provision granting insurance companies only the right to reduce, or subrogate, the compensation they are obligated to pay parties insured under their uninsured motorist coverage. *See* 24-A M.R.S.A. § 2902(4) (2000). Insurance companies assert this right embodied in section 2902(4) by including "limit[s] reduction clauses" in their uninsured motorist policies. *See, e.g., Tibbetts v. Me. Bonding & Cas. Co.,* 618 A.2d 731, 732 (Me.1992) (" '[D]amages ... shall be reduced by all sums ... *[p]aid* because of the "bodily injury" by or on behalf of persons ... who may be legally responsible.' ") (quoting the Tibbettses' insurance policy) (emphasis added). However, a limits reduction clause that extends an insurer's subrogation rights beyond that authorized by section 2902(4) is unenforceable. *See id.* at 734 (holding that an insurance policy's offset provision was unenforceable because section 2902(4) does not authorize a reduction for proceeds received from a fully insured joint tortfeasor); *see also Wescott v. Allstate Ins.,* 397 A.2d 156, 166 (Me.1979) ("[T]o the extent that policy terms are repugnant to the express or implied requirements of [section 2902(4)], they are void and unenforceable.").

[¶ 19] To resolve the present appeal, therefore, one must first ascertain section 2902(4)'s parameters and, second, analyze whether State Farm's limits reduction clause exceeds those parameters. We review the interpretation of section 2902(4), a question of law, de novo. *See State v. McLaughlin,* 2002 ME 55, ¶ 5, 794 A.2d 69, 72. "We look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *Coker v. City of Lewiston,* 1998 ME 93, ¶ 7, 710 A.2d 909, 910. "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as [people] of common intelligence would usually ascribe to them." *State v. Vainio,* 466 A.2d 471, 474 (Me.1983).

[¶ 20] Section 2902(1) requires State Farm to provide uninsured/underinsured vehicle coverage. Section 2902(2) specifies the amount of underinsured and uninsured coverage an insurer must provide. In this case it is undisputed that the State Farm policy provided $100,000 of underinsured motorist coverage. These two subsections establish the extent of State Farm's potential liability.[10]

[¶ 21] State Farm asserts that section 2902(4), which it characterizes as a "set off provision," allows it to prospectively limit its coverage to $50,000. Section 2902(4), however, is not a set off provision. Section 2902(4) provides:

> In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the *insurer shall be entitled to the proceeds* of any settlement or recovery from any person legally responsible for the bodily injury *as to which such payment was made,* and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

24-A M.R.S.A. § 2902(4) (emphasis added). The plain language of this subsection

---

10. State Farm does not deny that it is liable under its underinsurance policy. The issue here is whether State Farm can prospectively limit its underinsurance coverage based on possible recovery from other drivers.

merely creates an *entitlement* on the part of the insurer, to any proceeds that the insured receives from the tortfeasor, in the event, and to the extent that the insured received payment under the policy.[11] This entitlement only operates after the insured has recovered under the policy, and only entitles the insurer to settlement proceeds. Thus, this section prevents an insured, from being compensated twice for her or his injuries.[12] This section does not affect the primary liability of the insurer.

[¶ 22] The Court interprets this clear statutory language—"the insurer shall be entitled to the proceeds of any settlement or recovery"—to mean that the insurer is entitled to limit its underinsured vehicle coverage based on the prospect of a settlement or recovery. To understand how the Court reaches this interpretation, it is necessary to examine its discussion of the intent behind underinsured vehicle coverage.

[¶ 23] The Court spends little time addressing the express language of the statute, preferring to focus on the "entire statutory scheme," the "nature of gap coverage," the "intent of the Legislature," as well as the rule in other states. Even if all of these sources conflict with the actual words in section 2902(4),[13] they are inapplicable in the absence of ambiguous language in the statute. We have consistently held that, when interpreting statutory language, we will not resort to indicia of legislative intent other than the statute itself unless the statute is ambiguous. *Home Builders Ass'n of Me. v. Town of Eliot,* 2000 ME 82, ¶ 4, 750 A.2d 566, 569 ("*Only* if the statutory language is ambiguous will 'we examine other indicia of legislative intent, such as legislative history.'") (emphasis added) (quoting *Coker,* 1998 ME 93, ¶ 7, 710 A.2d at 910).[14] The Court does not assert that any part of

11. The operative and unambiguous concept is "the *event* of payment." It is undeniably the fulcrum upon which the entire subsection turns. It is also undeniable that, in the case before us, the event of payment has not occurred. The Court reads the language of section 2902(4) to allow an insurer to prospectively limit coverage for any amount that an insured may be entitled to receive, irrespective of whether the insured actually receives a single cent.

12. As we have previously said in *Wescott v. Allstate Insurance:*

> 24-A, M.R.S.A., § 2902(4) only assures to the insurer, once it has made payment under the uninsured vehicle coverage, entitlement or subrogation rights "to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle."

397 A.2d 156, 168 (Me.1979).

13. The intentions of the Legislature with respect to the circumstances before us today are highly debatable. The Court's result ensures that the victim of a drunk driving accident will go without compensation for her injuries because a technicality allows her insurer to avoid liability. It is doubtful that the Legislature intended the statute to have this effect. *See Wescott,* 397 A.2d at 166 ("The legislative intent is to benefit *all* insured motorists by throwing the burden of compensating for injuries *which would otherwise go without redress* from the individual victim to the insurance industry for a premium.") (emphasis added); *see also Peerless Ins. Co. v. Progressive Ins. Co.,* 2003 ME 66, ¶ 6, 822 A.2d 1125, 1127 ("Overall, '[t]he uninsured motorist statute is to be construed so as to assure a person injured by an uninsured motorist that he will ... recover, from whatever source available, up to the total amount of his damages.'") (quoting *Wescott,* 397 A.2d at 167).

14. *See also Tibbetts v. Me. Bonding & Cas. Co.,* 618 A.2d 731, 733 (Me.1992) ("'Unless the statute reveals a contrary intent,—the words "must be given their plain, common and ordinary meaning." We will not look beyond clear and unambiguous statutory language.'") (quoting *State v. Edward C.,* 531 A.2d 672, 673 (Me.1987)).

section 2902(4) is ambiguous, and therefore, its plain language must be applied. Because the section merely creates an entitlement in any proceeds or settlement, it does not reduce the extent of State Farm's liability. State Farm's entitlement to settlement proceeds, should such proceeds ever materialize, in no way dilutes its obligation under the statute to insure Levine to the full extent of its underinsured vehicle coverage for bodily injury or death.

[¶ 24] The common and ordinary meaning of the phrase "the insurer shall be entitled to the proceeds of any settlement or recovery" indicates our Legislature intended that an insurer's subrogation rights are not triggered until the injured insured receives some type of payment from the party responsible for causing the claimant's bodily injury. *See* 24–A M.R.S.A. § 2902(4); *Tibbetts*, 618 A.2d at 734 ("Therefore, the insurer's right of subrogation also applies only to proceeds received from, or on behalf of, the operator of the underinsured vehicle that triggered the insurer's obligation."); *accord Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 703 A.2d 661, 663 (1997) ("Recovery by an insured from an underinsured motorist tortfeasor triggers an insurer's right to reduce payment under uninsured motorist coverage, even though the injured insured has not been fully compensated."); *Muir v. Hartford Accident & Indem. Co.*, 147 Vt. 590, 522 A.2d 236, 239 (1987) ("Section 941(e) [analogous provision to section 2902(4) ] applies only to payments a plaintiff receives from the uninsured motorist.").

[¶ 25] I note that we previously recognized such an interpretation of section 2902(4) in dicta. *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 420 (Me. 1987). In *Young*, we recognized that an insurance company's subrogation rights

could be "impair[ed]" when an injured uninsured motorist is "legally entitled" to payment from the insurance company, yet the claimant is barred from asserting a cause of action against the owner of the uninsured vehicle who caused the injury because the applicable tort statute of limitations had expired. *Id.* This observation was implicitly premised on the notion, which I would make clear, that the insurer's statutory subrogation rights were extinguished once the limitations period expired on the claimant's cause of action because the company lost its subrogation rights once the claimant was unable to receive proceeds from the tortfeasor. *See id.* ("[T]he insurer has other means available to it to protect [its subrogation] rights. In any event, subrogation rights are generally of little practical importance in this area of the law.").

[¶ 26] Finally, my interpretation of section 2902(4) also comports with the uninsured vehicle statute's overall objective of ensuring that the injured insured receives full satisfaction of damages to which he or she is entitled before the insurance company's subrogation rights are implicated. *Wescott*, 397 A.2d at 169 ("In view of the fact that [the uninsured vehicle statute] must be construed liberally in favor of the insured victim and strictly against the insurer, [section 2902(4) ] must be given that narrow interpretation which favors full satisfaction by the insured victim of his damages to which he is legally entitled to recover from the owners or operators of the uninsured vehicle before the right of subrogation attaches.").

[¶ 27] Insurance companies have generally acknowledged section 2902(4)'s limitation on offsets by including language in their policy that only permits reductions for damages "paid" by the owner or operator of the uninsured or underinsured vehicle responsible for causing the claimant's

bodily injury. *See, e.g., Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 1 n. 1, 742 A.2d 482, 484 (" 'Damages payable will be reduced by ... all amounts *paid by* the owner or operator of the uninsured auto or anyone else responsible.' ") (quoting Saucier's insurance policy) (emphasis added). Unlike those policies, however, State Farm's policy contravenes section 2902(4) because it attempts to create an offset for "any amount ... *payable*," and for the "total of the bodily injury limits of all other vehicle liability policies or bonds that *apply*" to the "legally liable" party, regardless of whether the party responsible for causing the injury pays the uninsured motorist any proceeds. (Emphasis added.)

[¶ 28] In light of the foregoing, State Farm's subrogation rights in this case never attached because Levine never received payment from Kruzynski or Kruzynski's liability carrier. *See* 24–A M.R.S.A. § 2902(4); *Tibbetts*, 618 A.2d at 734. State Farm is therefore not entitled to the $50,000 offset, and the limit-reduction clause contained in its uninsured motorist coverage is unenforceable to the extent that it permits an offset when the injured party does not receive payment from the party responsible for causing the claimant's bodily injury.

[¶ 29] In its conclusion, the Court suggests that, if my analysis is adopted, "the economic risks of injury in motor vehicle accidents would shift entirely to the underinsured vehicle coverage carrier." The circumstances of this case are too unique to draw sweeping conclusions from it. I note, however, that the Legislature has already shifted to the insurance industry "the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Wescott*, 397

A.2d at 166. I would affirm the judgment entered in the Superior Court.