STATE OF MAINE
ANDROSCOGGIN, ss.

RECEIVED & FILED

APR 2 2 2004

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-02-161
E AC - A VO - 4 20 20

JARED L. WEBSTER,
        Plaintiff

        v.

        ORDER

THE HANOVER INSURANCE COMPANY,
and
FIDELITY & GUARANTY INSURANCE COMPANY,
and
DAWN BOISVERT,
and
COMMERCIAL UNION YORK INSURANCE
COMPANY,

        Defendants

MAY 25 2004

## BACKGROUND AND PROCEDURAL HISTORY

On October 16, 2000, on Route 4 in Auburn, Maine, a vehicle driven by Jared Webster collided with a vehicle driven by Dawn Boisvert. On September 16, 2002, Mr. Webster initiated a personal injury lawsuit against Ms. Boisvert, the Hanover Insurance Company, and Hertz Claim Management Corporation. In his complaint, Webster asserted that he had sustained injuries and incurred medical expenses "as the result of a motor vehicle accident involving a vehicle operated by Defendant, Dawn Boisvert." He also asserted that Ms. Boisvert was an uninsured motorist.

In this first complaint, Mr. Webster claimed that, at the time of the accident, he was operating a vehicle loaned to him by Auburn Motor Sales and insured by Hertz. He also claimed that he was insured by Hanover via a policy covering his own vehicle. In Count I, Webster asserted that Hanover had breached its contract with him by refusing to pay him for the damages he sustained in the accident. In Count II, Webster

asserted that Hertz had breached its contract with him by refusing to pay him for the damages he sustained in the accident. In Count III, he asserted that Boisvert's negligence and/or recklessness was the cause of the accident. In Count IV he asserted that her actions had been intentional and malicious, and that he was entitled to punitive damages.

Boisvert was served with a copy of that complaint on September 16, 2002. She filed an answer on October 2, 2002.

On October 9, 2002, Mr. Webster filed an amended complaint.[1] In that document, he named Fidelity as the insurer of the vehicle he had been driving, and added Count V, where he asserted that Fidelity had breached its contract with him by refusing to pay him for the damages he sustained in the accident.

Hanover filed an answer on October 29, 2002. On October 31, 2002, it filed its notice and acknowledgement of receipt of complaint and summons. Although the acknowledgement does not indicate that the amended complaint was the document served, Hanover's answer responded to all five paragraphs of the amended complaint.

On November 25, 2002, Attorneys Mitchell and Garcia entered their appearances on behalf of Hertz. On November 26, 2002, Hertz filed an acknowledgement of receipt of summons and complaint, and a consent to the amended complaint. On the same date, Boisvert filed her consent to the amended complaint.

On December 2, 2002, Webster filed a motion to amend the complaint, attaching a copy of the amended complaint he had filed earlier. That motion was granted on December 3, 2002.

---

[1] Because Ms. Boisvert had filed a response to the first complaint, a motion to amend was required. M.R.Civ.P. 15(a).

Hertz filed its answer on December 11, 2002, and included an affirmative defense that the plaintiff had failed to present any cause or controversy that affected it. On December 17, 2002, Webster filed a motion to dismiss his complaint against Hertz. That motion was granted on January 14, 2003.

Fidelity filed its answer to the amended complaint on January 2, 2003.

Webster filed a second motion to amend his complaint on April 17, 2003. The second amended compliant, agreed to by Boisvert, Hanover, and Fidelity, added an assertion that Commercial Union York Insurance Company was another insurer of the vehicle he was operating during the accident. Webster added Count VI to assert that he was also entitled to payment from Commercial Union. Despite the Order of January 14, 2003, the second amended complaint still named Hertz as a party, and contained a Count II that asserted that Hertz had breached an agreement with Webster.[2]

Commercial Union, now known as OneBeacon Insurance Company, answered the second amended complaint on April 30, 2003. On September 3, 2003, Attorney John Lucy entered his appearance on behalf of Ms. Boisvert.

On December 4, 2003, Fidelity filed a motion for summary judgment with a supporting statement of material facts. With the opposition he filed on January 16, 2004, Webster included his responses to Fidelity's asserted facts, and added some additional facts. OneBeacon responded to Fidelity's motion and to plaintiff's opposition on January 21, 2004. Fidelity replied to the plaintiff's opposition on January 23, 2004.

On February 20, 2004, Ms. Boisvert filed an unopposed motion to dismiss her from the case, based upon a settlement agreement her insurer reached with Mr. Webster. That motion was granted on February 20, 2004.

---

[2] Webster is encouraged to correct this.

A hearing on Fidelity's motion for summary judgment was held on April 2, 2004. The findings and conclusions below are based upon the parties' submissions and upon the court's review of the pertinent case law.

## FINDINGS OF FACT

On October 16, 2000, Jared Webster was driving a Ford Taurus station wagon provided to him by Auburn Motor Sales (AMS) while his own vehicle was in the garage for warranty work. Fidelity Statements of Material Fact (FSMF) 7. The Taurus wagon was owned by AMS, and was covered by Fidelity insurance policy #DRE2925100. Plaintiff's Statements of Material Fact (PSMF) 24, 25 and 26. This policy provided coverage to the operator of the Taurus in the event the operator sustained injuries caused by an uninsured motorist. PSMF 27.

Before Webster used the Ford Taurus provided by AMS he initialed and signed an AMS form called "Rental Record." FSMF 11. Included within the third attachment filed with its motion, was a second page with the Rental Record that is entitled "Rental Agreement Terms & Conditions." Although there is no record citation to support the allegation that this document was attached to the Rental Record when Webster signed it, Webster's response to FSMF 11 indicates that he "initialed a document labeled 'rental agreement.'" The Rental Record states that Webster's insurance would be the primary insurer. FSMF 12. In addition, Fidelity has asserted that Webster initialed the form, declining "the optional Comprehensive and Collision Damage Waiver. " FSMF 12. Webster has qualified the effect of the initialization, but has not denied that he placed his initials on the form. Neither the "Rental Record," nor the "Rental Agreement" was signed by a representative of AMS. PSMF 28.

4

As noted in the summary above, Webster was driving the Taurus when he was involved in the accident with Dawn Boisvert. Boisvert's insurer, Progressive, initially denied coverage of the accident under the intentional acts exclusion of its policy. FSMF 17. However, Progressive recently settled Webster's claim against its insured. Progressive's liability coverage limits are $50,000 and $100,000. FSMF 19.

AMS's vehicle was covered by a policy from Fidelity that was provided by Ford Motor Company. Fidelity's uninsured/underinsured motorist coverage equals $50,000/$100,000. FSMF 22.

AMS itself is covered by a policy from OneBeacon.

In October 2000, Webster's personal automobile was insured by Hanover Insurance Company. FSMF 1.[3] His policy coverage equals $50,000/$100,000. FSMF 20.

Based upon the0 record presented, Fidelity has asserted that, as a matter of law, the vehicle Webster was driving was a rental, and that the rental contract required his own insurer, Hanover, to be the primary insurer. In addition, Fidelity has argued that its coverage cannot be "stacked" with the coverage available through Hanover. At the hearing held on April 1, 2004, both OneBeacon and Webster agreed that the vehicle was a rental, and that Hanover was the primary insurer.[4] However, both OneBeacon and

---

[3] The record citation provided by Fidelity in support of this assertion was not contained in the record at the time the motion was submitted. However, without objection, Fidelity was permitted to submit its responses to plaintiff's requests for admissions dated January 17, 2003, Hanover's amended and supplemental response to plaintiff's request for admissions dated February 6, 2003, and the transcript of Ron Harrington's deposition, dated March 18, 2003.

[4] Although Webster did not contest that the vehicle was a rental, he was apparently arguing that the Rental Agreement could not be enforced because no party signed it. However, the Rental Agreement was both signed and initialed by Webster. FSMF 11, 12. Although no signature by any person representing Auburn Motor Sales appears on the document, that missing signature, in this instance, does not render the contract unenforceable. *Portland Terminal Co., et al. v. Boston M.R.R.*, 144 A. 390 (Me. 1929).

Webster denied that the Fidelity policy could not be stacked with any other coverage available to Webster. Hanover did not appear at the hearing, and filed no response to the pending motion.

## DISCUSSION

As discussed above, all of the parties have agreed that Hanover must act as the primary insurer for the claim asserted by Webster. The only issue to be decided, therefore, is whether the coverage provided by Fidelity will also be available to Webster if the factual circumstances of his claim justify an award greater than the sum available through Hanover.

In support of its motion, Fidelity asserted that its policy language precludes the stacking of uninsured/underinsured motorist coverage, and supported that assertion with an affidavit from Adele Albright, the senior claims examiner assigned to this claim. FSMF 23. Attached to Ms. Albright's affidavit are six photocopied pages she alleged were the policy provisions that relate to this issue. The following language is found on page 2 of an attached document that is identified as "CA 21 17 12 93":

E. CHANGES IN CONDITIONS

The CONDITIONS are changed for UNINSURED MOTORISTS COVERAGE as follows:

1.  OTHER INSURANCE in the Business Auto and Garage Coverage Forms and OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS in the Truckers and Motor Carrier Coverage Forms is replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a.  The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

6

Based upon this language, and because the Hanover and Fidelity policies have identical limits, Fidelity has asserted that it is not obligated to provide coverage to Webster. In his denial of FSMF 23, Webster argued that the language quoted above does not specifically refer to "stacking," and that Fidelity had failed to attach the entire policy. Webster also argued that the language in the policy is ambiguous and confusing, referring to "the most we will pay for all damages" in one endorsement and "the maximum recovery" in another endorsement. In addition, Webster argued that, because the Rental Agreement did not include "the language set forth in 24-A M.R.S.A. § 2902 pertaining to disclaiming or excluding uninsured motorist coverage," Fidelity could not use the Agreement to escape its obligation.

In considering the arguments presented, it is important to recall the purpose of the type of insurance at issue here. As the Law Court stated earlier this year:

> Underinsured and uninsured vehicle coverage is intended to provide financial compensation in instances where the tortfeasor "'is uninsured'" or "'is financially unable to furnish adequate compensation for the injuries caused in the accident.'" *Braley v. Berkshire Mut. Ins. Co.,* 440 A.2d 359, 362 (Me. 1982) (quoting *Wescott v. Allstate Ins.,* 397 A.2d 156, 166 (Me. 1979). It was not intended to supplant the tortfeasor's coverage.

*Levine v. State Farm,* 2004 ME 33, ¶ 8, 843 A.2d 24, __. In this case, the tortfeasor is Boisvert. Although her vehicle was originally an uninsured motor vehicle by virtue of her insurer's denial of coverage, that status has recently been changed. 24-A M.R.S.A. § 2902(1) defines an underinsured motor vehicle as one with coverage "less than the limits of the injured party's uninsured vehicle coverage." If the policies are stacked, then Boisvert's vehicle was underinsured.

In 1979, in the *Wescott* decision, the Law Court addressed an example of the type of "excess-escape clause" relied upon by Fidelity. In that decision, it explained that stacking of policies was not prohibited:

> The statutory language does not profess to impose any ceiling upon the insured's right of recovery. It would seem logical to believe our Legislators, in enacting the uninsured vehicle legislation, were aware that many motorists are insured under multiple insurance policies, under their own as well as under policies issued to the owners or operators of vehicles in which they may be injured while passengers therein. If the Legislature had intended to limit the injured insured to recovery under one policy only, it would seem that it would have so indicated by proper expression. Since the statute explicitly states without any equivocation whatever that each liability policy must supply the required minimum degree of protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles, any legal recognition of the "excess-escape" clause under the uninsured vehicle coverage portion of such insurance policies would subvert the purpose of the statute and frustrate the State policy. Hence, such clause is void and unenforceable. *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584, 591 (1971).
>
> Even if it might be said that our present holding may result in a windfall, because the insured is permitted recovery in excess of what she would have received if the uninsured motorist had been insured for the minimum amount required under our Financial Responsibility Act ( 29 M.R.S.A. §§ 781-788), such is not inconsistent with the uninsured vehicle coverage legislation which, we believe, was intended to protect an insured to the extent of his actual loss.

*Wescott, supra*, at 170.

Three years later, the Court noted that the language of 24-A M.R.S.A. § 2902 did not "mandate 'stacking' of the stated policy limits of uninsured motorist coverage as described in a single multi-vehicle liability insurance policy." *Dufour v. Metro. Prop. & Liab. Ins. Co.*, 438 A.2d 1290, 1292. Based upon the specific language of the policy in question, and the facts presented, the Court held that stacking was not allowed in that case.

8

In 1983, the Court explained that, in determining whether a motor vehicle could be considered underinsured pursuant to 24-A M.R.S.A. § 2902(1), the Legislature's intent was to "permit the insured injured person the same recovery which would have been available to him had the tortfeasor been insured to the same extent as the injured party." *Connelly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935, (Me. 1983). In that case, the plaintiff was insured through two policies: the one covering her own vehicle; and the one covering the vehicle she was riding in at the time of the accident.

Ten years later, the Court addressed a different factual scenario. In *Moody v. Horace Mann Ins. Co.*, 634 A.2d 1309 (Me. 1993), the Court held that a single insurer could limit its own exposure if it had issued two policies to the same party. In its decision, the Court noted that, because the language of the anti-stacking provisions "did not void the underinsured motorist coverage of *any one policy* . . ." the provisions did not violate 24-A M.R.S.A. § 2902. *Moody, supra*, at 1311. (Emphasis added.)

In this case, if the court accepted Fidelity's interpretation of its policy, Fidelity's underinsured motorist coverage would be voided. That effect is contrary to the purpose of the statute, and against public policy.

The contract signed by Webster in this case refers to "liability insurance" and does not mention uninsured or underinsured motorist coverage—two different types of insurance with different purposes. (FSMF Ex. 2.) In addition, the document that purports to explain to Webster, and to others in his position, that the insurance on his rental vehicle would not be available in the event of an accident with an uninsured or underinsured motor vehicle, lacks the mandatory language of 24-A M.R.S.A. § 2902(2).

Based upon these findings and conclusions, the court finds that Fidelity's attempt to limit its exposure to any amount less than $50,000 is contrary to 29-A M.R.S.A. § 1605

9

and void. "[C]ourts . . . will construe conditions and exceptions of [an] insurance contract, inserted therein in an attempt to limit the coverage prescribed by the statute, strictly against the insurer and liberally in favor of the insured." *Wescott* at 167.

## ORDER

For the reasons stated above, Fidelity's motion for summary judgment is denied.

The clerk is directed to incorporate this order by reference in the docket for this case.

Dated: *April 22, 2004*

_____
Ellen A. Gorman
Superior Court Justice

10