STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-375

THERESA ALLOCCA, et al,

    Plaintiffs

v.

    ORDER

YORK INSURANCE CO. OF MAINE, et al,

    Defendants

Before the court are motions for summary judgment by defendants York Insurance Co. of Maine, Allstate Insurance Co., and Horace Mann Teachers Insurance Co. Plaintiffs Theresa Allocca and Timothy Davison contend that all three insurers are contractually liable to provide uninsured motorist (UM) coverage in connection with the death of their son, Timothy Austin Davison, known as "Asti," who was murdered on Interstate 81 in Pennsylvania on January 4, 2014.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil,* 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be

resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case all of the material facts necessary to decide the pending motions are undisputed for purposes of summary judgment. See Allstate SMF ¶¶ 12-10, 13-14 (admitted); York Insurance SMF ¶¶ 1-13 (admitted with two minor qualifications); Horace Mann SMF ¶¶ 1-5 (admitted).

Undisputed Facts

On January 4, 2014 Asti Davison was driving his father's SUV northbound on Interstate 81 in Maryland when he began to be pursued by an unknown assailant in a pickup truck. During the pursuit the unknown assailant fired shots at Asti's vehicle.

The two vehicles crossed into Pennsylvania on Interstate 81, and the assailant rammed his truck into the SUV Asti was driving, pushing it off the road into the median strip. The assailant then reversed direction, approaching the SUV from the southbound lanes of Interstate 81, pulled his truck next to the SUV, fired several shots at Asti, and drove away. Asti subsequently died of gunshot wounds.

The applicable automobile insurance policies (or relevant portions thereof) are contained in the summary judgment record.[1] York agrees that Asti was potentially qualified for UM

---

[1] This is true with one exception. Asti Davison was personally insured under both an Allstate automobile policy and an Allstate motorcycle policy. The Allstate motorcycle policy is annexed as Exhibit C to the original complaint. Although paragraph 57 of the amended complaint asserts that the Allstate automobile policy is annexed as Exhibit B to the original complaint, only the declarations pages were in fact annexed to the copy filed with the court. In their statements of material facts the parties appear to assume that the entire policy was provided, *see* Allstate SMF ¶ 14 (admitted). Plaintiffs do not dispute the policy

coverage under a York automobile policy issued to his father that specifically listed the SUV which Asti was driving as a covered vehicle. Allstate does not dispute that Asti was potentially qualified for UM coverage under Allstate auto policies issued on Asti's car and motorcycle. Both York and Allstate contend, however, that plaintiffs' claims in this case do not fall within their policies' UM coverage because Asti's death was not an accident and because it did not arise out of the operation or use of a motor vehicle within the meaning of Maine's UM statute and the applicable policies.

Horace Mann joins in the arguments raised by York and Allstate and raises an additional argument – that plaintiff Allocca is not entitled to UM coverage under the Horace Mann policy issued to Allocca because Asti, although a relative, no longer resided with her. For purposes of summary judgment Allocca concedes this fact[2] but nonetheless contends that she is entitled to recover under the policy as a beneficiary of Asti's estate.

In addition to the undisputed facts, there is one aspect of the case that is or may be disputed but is not pertinent to the pending motions before the court. In passing, Allstate's SMF notes the September 21, 2015 filing of a criminal complaint by Pennsylvania authorities against John Strawser, who is alleged to be the assailant who pursued Asti, ran him off the road, and shot him. *See* Allstate SMF ¶¶ 11-12. If the driver responsible for Asti's death has been identified, this potentially raises other issues as to UM coverage, given that plaintiffs are currently proceeding on the theory that Asti was the victim of a hit and run vehicle whose operator cannot

---

language quoted in Allstate's memorandum of law and agree that the pertinent provisions in the Allstate automobile policy are substantially similar to those in the York policy. *See* Plaintiff Timothy Davison's Opposition to Allstate's Motion for Summary Judgment, dated February 5, 2016, at 2. The court will proceed on that understanding.

[2] *See* Plaintiff Allocca's Opposition to Horace Mann's Motion for Summary Judgment, dated February 5, 2016, at 2.

be identified.[3] At this point, however, the criminal complaint is hearsay, and none of the defendants are relying on the alleged identification of Strawser in connection with the pending motions. *See* Allstate Motion for Summary Judgment dated December 17, 2015 at 1 n.1 ("For purposes of this motion, Defendants assume that Strawser was uninsured . . .").

### 1. Application of UM Coverage to Intentionally Inflicted Injury

This case raises a fundamental question with respect to the applicability of UM coverage to deliberate acts intended to cause harm. That question has not been directly addressed by the Law Court. Aside from the particular facts of this case, this issue would arise in any situation where an innocent insured was injured when the insured's car was deliberately rammed by an uninsured driver in a road rage incident.

As defendants note, the Law Court has frequently stated that the intent of the UM statute is to provide an insured with the same recovery which would have been available if the tortfeasor had been insured to the same extent as the injured party. *E.g., Farthing v. Allstate Insurance Co.,* 2010 ME 131 ¶ 6, 10 A.3d 667; *Tibbetts v. Dairyland Insurance Co.,* 2010 ME 61 ¶ 12, 999 A.2d 930. They point out that neither Asti nor his assailant would have been insured for intentional criminal acts and contend that UM coverage should therefore not be available here.

Plaintiffs counter that the UM statute is remedial legislation and that both the UM statute and UM policies should be liberally construed in favor of insured victims. *E.g., Beal v. Allstate Insurance Co.,* 2010 ME 20 ¶ 34, 989 A.2d 733. They argue that innocent insureds should not be denied coverage depending on whether uninsured tortfeasors intended to inflict harm as opposed to having acted negligently.

---

[3] Among the additional issues raised would be (1) to what extent, if any, later identification of a hit and run driver would affect UM coverage; (2) whether there is adequate evidence that Strawser was the hit and run driver; and (3) whether Strawser's vehicle was uninsured.

4

To resolve this issue the court considers the language and purpose of the UM statute, the language of the relevant UM policies, and the prior decisions of the Law Court. As discussed below, those do not necessarily yield easy answers.

2. "Caused by an Accident"

All four UM policies at issue provide that the insurers will pay compensatory damages that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury "caused by an accident." See York policy Part C ¶ A(2) (Exhibit B to York SMF at 11, 18); Allstate auto policy as quoted in Allstate's memorandum of law at 3; Allstate motorcycle policy Part 3 (Exhibit C to complaint at 13); Horace Mann policy Section IV (Exhibit A to Donahue Affidavit at 29). All three defendants contend, based on the undisputed facts surrounding the death of Asti Davison, that his death was not "caused by an accident."

On this issue plaintiffs argue at the outset that, by its terms, Maine's UM statute does not limit recovery to bodily injury "caused by an accident" and that insurers are not entitled to place limits on recovery that are not contained in the statute. 24-A M.R.S. § 2902(1) requires coverage for

> persons insured under this policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness, or disease, including death, sustained by an injured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

Plaintiffs are correct that no reference to an "accident" is made in that subsection.

Nevertheless, other subsections in the UM statute refer to the procedure to be followed when UM policies have a "per accident limit." 24-A M.R.S. §§ 2902(6)(A), (6)(B). Moreover,

5

the Law Court has on numerous occasions explained that the intent of the UM statute is "to protect insured people injured in motor vehicle accidents caused by uninsured or underinsured drivers." *Dickau v. Vermont Mutual Insurance Co.,* 2014 ME 158 ¶ 43, 107 A.3d 621 (emphasis added). *Accord, Westcott v. Allstate Insurance,* 397 A.2d 156 (Me. 1979):

> The obvious design of our uninsured vehicle coverage statute is to protect a responsible insured motorist against the hazards presented by the operation of motor vehicles where injuries are inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene and in most instances is financially unable to furnish adequate compensation for the injuries caused in the accident.
> . . . . .
> [B]y enacting the uninsured vehicle coverage statute, the Legislature has indicated a strong public policy in favor of the just compensation of accident victims.

397 A.2d at 166-67 (emphasis added).

*Westcott* is one of the seminal cases on UM coverage and its express references to the UM statute as designed to protect "accident victims" and provide compensation for injuries caused in an "accident" have been frequently quoted in subsequent Law Court decisions. *E.g., Beal v. Allstate Insurance Co.,* 2010 ME 20 ¶ 34; *Levine v. State Farm Mutual Auto Insurance Co.,* 2004 ME 33 ¶ 8, 843 A.2d 24.

The court will assume that the insertion of policy language limiting coverage to injury or death "caused by an accident" is not inconsistent with Maine's UM statute. However, the term accident is not defined in any of the policies, and that leads to another question – how should "accident" be interpreted? There is a split of authority on this question in other jurisdictions.

Plaintiffs cite cases holding that (1) the term "accident" must be interpreted from the point of view of the insured, (2) that the meaning of accident is ambiguous, and (3) that an accident should be interpreted as an unexpected and unintended event from the insured's point of view, regardless of whether it involved an intentional and deliberate act by the tortfeasor. *E.g.,*

6

*American Family Mutual Insurance Co. v. Petersen,* 679 N.W.2d 571, 578-82 (Iowa 2004); *State Farm Mutual Insurance Co. v. Pitman,* 809 A.2d 1280, 1282 (N.H. 2002); *Shaw v. City of Jersey City,* 811 A.2d 404, 410-11 (N.J. 2002). *Accord, State Farm Mutual Auto Insurance Co. v. Langan,* 947 N.E. 2d 124, 127-28 (N.Y. 2011). This appears to be the majority view of the courts that have decided the issue. In the 2011 *Langan* case cited above, the New York Court of Appeals noted that its decision was in keeping with the national trend toward allowing innocent insureds to recover under their UM coverage when they have been injured through the intentional conduct of another driver. 679 N.E.2d at 128-29.

Other jurisdictions have reached the opposite result. *E.g., Landry v. Dairyland Insurance Co.,* 701 A.2d 1035, 1036 (Vt. 1997); *Roller v. Stonewall Insurance Co.,* 801 P.2d 207, 210 (Wash. 1990).[4] Those decisions have concluded that the ordinary meaning of "accident" is an unexpected happening "without intention or design" and that an injury resulting from an intentional act is not an accident where the harm had been intended.

The Law Court has ruled that in interpreting an insurance contract, "if the language of the policy is unambiguous, we apply its plain meaning." *Dickau v. Vermont Mutual Insurance Co.,* 2014 ME 158 ¶ 13. Language in an insurance contract is ambiguous if it is reasonably susceptible of different interpretations. *Metropolitan Property and Casualty Ins. Co. v. Estate of Benson,* 2015 ME 155 ¶ 8, 128 A.3d 1065. Any ambiguity in the policy language is resolved in favor of coverage. *Id.* However, the rule requiring strict construction against the insurer is not applicable unless there is an ambiguity. *Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308, 311 (Me. 1987). The Law Court has also stated:

---

[4] The Washington Supreme Court's decision in *Roller v. Stonewall Insurance Co.* went on to discuss, in the alternative, whether the particular injuries in question arose from the use of a motor vehicle. That aspect of its ruling has been overruled in part. *See Butzberger v. Foster,* 89 P.3d 689, 696 (Wash. 2004).

> In applying these rules of construction, we view the contract language from the perspective of the average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.

*Peerless Insurance Co. v. Wood*, 685 A.2d 1173, 1174 (Me. 1996). *Accord, Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d at 310.

Applying that principle of construction and left to its own devices, the court would have difficulty concluding that an injury inflicted deliberately and intentionally would qualify as an "accident." Specifically, the court would find, based on the facts of this case – where an insured was pursued and shot at on the highway by an assailant who then rammed the insured's vehicle off the road, drew alongside, and fatally shot the insured – that an ordinarily intelligent person would not consider that the insured's death was "caused by an accident."

However, the cases cited by plaintiff and certain dictionary definitions of "accident" leave room for the possibility that "accident" may nevertheless be reasonably susceptible of different interpretations.

The Random House Dictionary defines an accident as "an undesirable or unfortunate happening that occurs unintentionally and usually results in harm." Random House Unabridged Dictionary (2d ed. 1993). The online Oxford English Dictionary defines accident as "an unfortunate incident that happens unexpectedly and unintentionally, typically resulting in damage or injury."[5] Other dictionaries, however, define accident as simply "an unexpected and undesirable event" or "something that occurs unexpectedly or unintentionally." Webster's II

---

[5] http://www.oxforddictionaries.com/us/definition/american_english/accident. The secondary meaning given is "an event that happens by chance or that is without apparent or deliberate cause."

8

New College Dictionary (1995), which then goes on to define "accidentally" as "occurring unexpectedly and unintentionally."[6]

As noted above, the Law Court has not considered whether UM coverage can apply to injury that is intentionally inflicted, nor has it considered the meaning of "accident" in UM policies. It has, however, interpreted insurance policies covering "accidents" in duty to defend cases. In those cases – where the applicable policies also are interpreted in favor of the insured – the Law Court has defined an accident as an unanticipated event even when a deliberate act is involved so long as it is possible that the consequences of that act were unintended:

> Although the term "accident" is not defined in the policy, we defined an accident in this context as "an unanticipated event." *See Vigna [v. Allstate Ins. Co.],* 686 A.2d at 600. Crucial to the understanding of this coverage provision is our ruling that "the 'accidental' nature of an event for purposes of a standard liability contract . . . does not derive from the voluntariness of the act but rather from the unintentional nature of the consequences flowing from the act." *Id. (citing Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350 (Me. 1996).

*Maine Mutual Fire Ins. Co. v. Gervais,* 1998 ME 197 ¶ 10, 715 A.2d 938.

Applying that interpretation here would appear to exclude the events in this case because it cannot be argued that the injury inflicted by Asti Davison's assailant was unintended. However, in applying that definition in "duty to defend" cases, the Law Court also had to consider policy language specifically excluding damages resulting from intentional acts. *See Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d at 1353. No such language is contained in the UM policies at issue in this case.

In sum, this court finds this to be an extremely close call. It ultimately does not need to resolve this issue because, as set forth below, it concludes that the Law Court's interpretation of

---

[6] Plaintiffs cite to a definition given in Black's Law Dictionary but the definitions given there are definitions from judicial decisions, not definitions that would be understood by average persons without legal training. *See Peerless Insurance Co. v. Wood,* 685 A.2d at 1174.

the requirement that bodily injury arise out of the ownership, maintenance or use of a motor vehicle would exclude UM coverage in this case.

### 3. Arising out of Operation or Use of a Motor Vehicle

Aside from whether an "accident" is involved, Maine's UM statute requires coverage for bodily injury, including death, "resulting from ownership, maintenance or use" of an uninsured or hit-and-run vehicle. 24-A M.R.S. § 2902(1). Defendants' policies include arguably broader language specifying that their UM coverage applies to bodily injury that "arises out of" ownership, maintenance, or use of a motor vehicle. *See* York policy Part C ¶ A(2) (Exhibit B to York SMF at 11, 18); Allstate auto policy as quoted in Allstate's memorandum of law at 3; Allstate motorcycle policy Part 3 (Exhibit C to complaint at 13); Horace Mann policy Section IV (Exhibit A to Donahue Affidavit at 29).[7]

Similar language is contained in UM policies in other jurisdictions. Where intentional torts are involved, jurisdictions that have concluded that "accidents" may include injuries that are intentionally inflicted have nevertheless reached different results on whether specific acts arose from use of a vehicle. To some extent, these rulings depend on the facts of each case but in some cases the decisions are difficult to reconcile. *See, e.g., Concord General Mutual Ins. Co. v. Doe,* 8 A.3d 154, 156 (N.H. 2010) (repeated assaults that occurred in vehicle while parked and while perpetrator was driving did not arise out of the use of a vehicle; vehicle was merely the situs of the acts in question); *American Family Mutual Ins. Co. v. Petersen,* 679 N.W. 2d 571, 583 (Iowa 2004) (sufficient causal connection to use of vehicle where victim was injured jumping from vehicle to avoid further assaults); *State Farm Mutual Auto Ins. Co. v. Kastner,* 77 P.3d 1256,

---

[7] The Horace Mann policy refers to "operation or ownership" of a vehicle rather than ownership, maintenance or use. This difference in wording does not affect the issues presented on the pending motions.

10

1258 (Colo. 2003) (use of vehicle to commit sexual assault was not foreseeable and lacked causal nexus with use of vehicle); *State Farm Mutual Auto Ins Co. v. Blystra,* 86 F.3d 1007, 1014 (10th Cir. 1996) (causal connection existed when pedestrian shot from vehicle); *Ruiz v. Farmers Insurance Co.,* 865 P.2d 762, 764 (Ariz. 1993) (insufficient causal connection in case of drive-by shooting from uninsured vehicle); *Ganiron v. Hawaii Insurance Guaranty Assn.,* 744 P.2d 1210, 1212 (Hawaii 1987) (UM coverage exists for shot fired from uninsured vehicle).

Looking to Maine law, plaintiffs argue that the term "arising out of" has been broadly interpreted to mean "originating from, growing out of, flowing from, incident to or having connection with." Plaintiff Timothy Davison's Opposition to Defendant York's Motion for Summary Judgment, dated February 5, 2016, at 16, citing *Acadia Ins. Co. v. Vermont Mutual Ins. Co.,* 2004 ME 121 ¶ 8, 860 A.2d 390.

Defendants focus more specifically on Law Court cases interpreting whether a claim arises out of the "ownership, maintenance or use" of a motor vehicle. In those cases the Law Court has followed an analysis initially announced in *Union Mutual Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308 (Me. 1987).[8] In that case the Law Court ruled that a causal relationship must exist between the accident or injury and the "use" of the vehicle but that proximate cause need not be shown. 521 A.2d at 310-11. Coverage will be extended if there is "a reasonable causal connection" between "the proper use of the vehicle" and the injury. 521 A.2d at 311.

In the *Union Mutual* case, the Law Court found a reasonable causal connection existed when an insured was injured when a firearm discharged while being unloaded from a vehicle. The court stated that the issue was whether the negligent act of the insured leading to the

---

[8] The certified question in *Union Mutual* was whether a clause in a Commercial Union policy providing coverage for accidents "arising from" the ownership, maintenance or use of any auto. 521 A.2d at 310.

accidental discharge of the firearm was "a reasonable incident of the use of the vehicle, leading to a reasonable expectation on the part of the insured that the resulting injury constituted a protected risk under the policy." It concluded that the loading or unloading of a firearm in connection with a hunting trip "is a reasonable and proper use of the vehicle." *Id.*

In contrast, when an injury was inflicted by a dog that had been left tied up to the insured's truck, the Law Court found that the use of the vehicle as a stationary object to tether the dog was not directly incidental to the operation of the vehicle and there was an insufficient causal connection between the injury and the use of the vehicle to invoke coverage under the insured's automobile policy. *Maine Mutual Fire Ins. Co. v. American International Underwriters Ins. Co.,* 677 A.2d 1073, 1075 (Me. 1996).

In this case there is a reasonable connection between the injury to Asti Davison and the use of the assailant's vehicle, which was employed to ram Asti Davison's SUV off the road and onto the median strip, where the assailant could pull alongside and fire the fatal shots. However, the Law Court repeatedly stated in the *Union Mutual* case that there had to be a reasonable causal connection between the injury and a proper use of the vehicle:

> The word "use" is a general catch-all term, encompassing all proper uses of a vehicle.
> . . . .
> The causal relationship between the proper use of the vehicle and subsequent injury need not be the proximate cause of the injury; coverage will be extended if there is a reasonable causal connection between the use and the injury.
> . . . .
> The "loading or unloading" of a firearm into or from a vehicle is a reasonable and proper use of the vehicle in this context.

521 A.2d at 310-11 (emphasis added).

Based on the undisputed facts, the court cannot find that the assailant's actions in this case would qualify as a "reasonable and proper use" of a vehicle. Applying the *Union Mutual*

test, therefore, plaintiffs' claims do not fall within the coverage of the defendants' UM policies because there is no causal connection with the "proper use" of a vehicle.

The court understands that the Law Court's emphasis on "proper use" in *Union Mutual* is not a definitive statement that UM coverage does not apply intentionally inflicted injuries, such as the death of Asti Davison in this case or an injury resulting from a road rage incident. However, it is this court's obligation to follow the law to the extent that it can be discerned from existing precedent. Absent further guidance from the Law Court, the court concludes that defendants' motions for summary judgment should be granted because the death of Asti Davison did not arise from a reasonable and proper use of a vehicle.

### 4. Allocca's Entitlement to Coverage under the Horace Mann Policy

Because this is a close case and because of the possibility of an appeal, the court will consider the separate issue raised by plaintiff Theresa Allocca's claim under the Horace Mann policy. As noted above, Allocca concedes that Asti Davison did not qualify as an "insured" under that policy.[9] Nevertheless, she contends that under the wording of the Horace Mann policy she is entitled to recover for Asti's death.

Specifically, the Horace Mann policy states:

> **We** will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**.

Horace Mann policy Section IV (Exhibit A to Donahue Affidavit at 29) (terms in boldface are defined). Bodily injury includes death. Allocca is an insured, and she alleges without contradiction that she is a statutory beneficiary entitled to collect damages from her son's

---

[9] The Horace Mann policy was issued to Allocca and would cover her, relatives who lived with her, and anyone driving her car. Asti Davison, although related, did not live with Allocca, and he was not driving her car on January 4, 2014.

13

assailant under Maine's Wrongful Death Act. Amended Complaint ¶ 53. Accordingly, she contends that she is entitled to collect damages under the policy for the death of her son, even though he was not an insured under the policy.

In 1999 the Law Court ruled that an insured who was a statutory beneficiary could recover for wrongful death under a UM policy even if the decedent did not qualify as an "insured." *Jack v. Tracy,* 1999 ME 13, 722 A.2d 869. In that case the relevant policy language was virtually identical to that in Allocca's Horace Mann policy. 1999 ME 13 ¶ 4. Subsequently, in *Butterfield v. Norfolk & Dedham Mutual Fire Ins. Co.,* 2004 ME 124, 860 A.2d 861, the Law Court addressed a case where the insurer had inserted language limiting recovery to instances where bodily injury was sustained by an "insured." The Court ruled that this was an impermissible limitation on the uninsured motorist coverage mandated by statute. 2004 ME 124 ¶¶ 19-20.

In response to *Butterfield,* the Legislature amended 24-A M.R.S. § 2902(1) in 2006 to allow insurers to limit UM coverage to bodily injury, including death, "sustained by an insured." Laws 2005, c. 591 § 1. Horace Mann argues that in light of this statutory change UM coverage should be limited to bodily injury "sustained by an insured" even though its policy does not contain that limitation.

In support of that argument, Horace Mann cites *Farthing v. Allstate Ins. Co.,* 2010 ME 131, 10 A.3d 667, in which the Law Court interpreted the UM statute as mandating that UM insurers offset amounts paid by the tortfeasor against the UM policy limit even if the policy language would not require such an offset. 2010 ME 131 ¶¶ 7-8, citing *Tibbetts v. Dairyland Ins. Co.,* 2010 ME 61 ¶¶ 15, 21.

14

In the court's view, *Farthing* is distinguishable. First, *Farthing* involved statutory language expressly stating that the insurer was "entitled" to an offset. 2010 ME 131 ¶ 5 n.2. In contrast, the statutory language applicable to Allocca's claim against Horace Mann provides that an insurer must provide UM coverage for bodily injury "sustained by an insured" but does not limit the insurer from providing additional coverage.

Second, *Farthing* was based on a central premise of the UM statute – that it is designed to provide the same recovery that would have been available if the tortfeasor had been insured to the same extent as the injured party. 2010 ME 131 ¶¶ 6, 8. Accepting the plaintiff's argument in *Farthing* would have resulted in allowing a greater recovery than would have been available if the tortfeasor had been insured to the same extent. 2010 ME 131 ¶ 9. In this case, if UM coverage were otherwise available, allowing recovery by a statutory beneficiary under the Wrongful Death statute would not violate any fundamental premise of UM coverage.

Finally, the legislative history of the 2006 amendment to § 2902(1) indicates that the Legislature did not intend to strictly limit UM coverage to bodily injury sustained by "insureds." The Statement of Fact to the 2006 amendment states that it was intended to clarify that an insurance policy "may limit uninsured motorist coverage to recovery of damages by an insured person under the policy." Statement of Fact to L. D. 2021, 122d Legislature, 2d Sess. (2006) (emphasis added). This does not demonstrate legislative intent to mandate such a limitation.

Accordingly, if UM coverage were otherwise available, Allocca is not barred by the 2006 amendment from recovering damages under the Horace Mann policy as a statutory beneficiary of her son's estate.

## 5. Plaintiffs' Claim of Unfair Claims Settlement Practices

Plaintiffs' amended complaint includes a claim alleging that the insurer defendants have engaged in unfair claims settlement practices under 24-A M.R.S. § 2436-A. Amended Complaint ¶¶ 57-60. In their motions the defendants have sought the dismissal of all of plaintiffs' claims but neither defendants nor plaintiffs have separately discussed the unfair claims settlement practices claim. As far as the court can tell, however, that claim cannot survive independently of plaintiffs' claim that UM coverage applies here. Accordingly, because the court upholds defendants' denial of UM coverage for the reasons stated at pages 10-13 above, plaintiffs' complaint will be dismissed in its entirety.

The entry shall be:

Defendants' motions for summary judgment are granted, and plaintiffs' complaint is dismissed. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June __14__, 2016

Thomas D. Warren
Justice, Superior Court

16