2008 ME 57

**Craig JIPSON**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2008.

Decided: March 20, 2008.

ing Liberty Mutual Fire Insurance Company's (Liberty Mutual) motion for summary judgment. Jipson contends that Maine's underinsured (UM) vehicle coverage law requires Liberty Mutual to pay the full amount of its UM coverage without setoff when the injury merits such recovery. We affirm because we conclude that Maine's UM law is a gap-filling statute and therefore find that Liberty Mutual is liable up to its policy limits for the amount by which the UM coverage exceeded the coverage paid by the tortfeasor.

## I. BACKGROUND

[¶ 2] In 2004, Craig Jipson sustained injuries in a motor vehicle accident with an underinsured motorist in Hebron, Maine. Jipson recovered $50,000, the full amount of the tortfeasor's liability coverage, for his injuries. The parties have stipulated that Jipson sustained damages in excess of $100,000. At the time of the accident, Jipson was insured by Liberty Mutual with UM coverage of $100,000 per person. In 2005, Jipson filed a complaint against Liberty Mutual seeking monetary compensation pursuant to his policy providing UM coverage. Liberty Mutual tendered $50,000 to Jipson and agreed that by doing so Jipson did not waive any further claims pursuant to the UM policy.

[¶ 3] The court granted summary judgment to Liberty Mutual because Jipson did not cite any Maine law to support an alternate result. In 2007, we dismissed Jipson's appeal to this Court, holding: "Because the case was dismissed with prejudice, upon the explicit signed agreement of both parties, Jipson's appeal fails to present a justiciable controversy." *Jipson v. Liberty Mutual*, 2007 ME 10, ¶ 1, 912 A.2d 1250, 1251.

[¶ 4] Jipson then filed an unopposed motion for relief from judgment. By agreement of the parties, the court grant-

Sheldon Tepler, Esq., Michael Welch, Esq. (orally), Hardy, Wolf & Downing, P.A., Lewiston, ME, for Craig Jipson.

Gregory M. Patient, Esq., Frederick C. Moore, Esq. (orally), Law Offices of Frederick C. Moore, Portland, ME, for Liberty Mutual Fire Insurance Co.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] Craig Jipson appeals from a judgment entered in the Superior Court (Androscoggin County, *Gorman, J.*) grant-

ed the order and allowed the parties time to file dispositive motions. Soon after, Liberty Mutual filed a second motion for summary judgment with a statement of six material facts. Jipson responded by admitting all of the material facts, but argued that because the precise amount of his damages had not yet been determined, the case was not ripe for judgment. In May 2007, the court granted Liberty Mutual's motion for summary judgment.

[¶ 5] Jipson timely tiled this appeal challenging the court's interpretation of Maine's UM statute, 24–A M.R.S. § 2902 (2007), as applied to his Liberty Mutual policy.

## II. DISCUSSION

[¶ 6] We review the grant of summary judgment de novo to determine if the prevailing party was entitled to judgment as a matter of law. *Sarah G. v. Maine Bonding & Cas. Co.*, 2005 ME 13, ¶ 5, 866 A.2d 835, 837. The interpretation of an insurance contract is also a matter of law reviewed de novo. *Id.* ¶ 10, 866 A.2d at 838.

[¶ 7] 24–A M.R.S. § 2902 provides in part:

1. A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, *including* death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underin-

sured or hit-and-run motor vehicle. The coverage required by this section may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

. . .

4. In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

The Liberty Mutual policy provides:

INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured;" and

2. Caused by an accident.

. . .

LIMIT OF LIABILITY

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

[¶ 8] We have consistently held that the legislature's purpose in enacting section 2902 was to provide an injured insured "the same recovery which would have been available ... had the tortfeasor been insured to the same extent as the injured party." *Tibbetts v. Maine Bonding & Cas. Co.*, 618 A.2d 731, 734 (Me.1992); *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me.1983); *Skidgell v. Universal Underwriters Ins. Co.*, 1997 ME 149, ¶ 8, 697 A.2d 831, 833. In *Levine v. State Farm Mut. Auto. Ins. Co.*, we characterized UM coverage as "gap coverage," 2004 ME 33, ¶ 11, 843 A.2d 24, 28, and reasoned:

> [I]f we were to accept [the] argument that the underinsured vehicle coverage carrier may not offset from its responsibility the amount of insurance held by the tortfeasor, the economic risks of injury in motor vehicle accidents would shift entirely to the underinsured vehicle coverage carrier. The expense involved in providing uninsured/underinsured vehicle coverage would increase, the cost to consumers would increase, and an insurance product originally required by the Legislature to protect against those who fail to carry adequate insurance would be treated as if it were the primary source of coverage notwithstanding the tortfeasor's own coverage. The Legislature neither mandated nor intended such a result.

*Id.* ¶ 14, 843 A.2d at 29.

[¶ 9] We have long held that insurers may offset the amount of coverage available in UM policies to the insured by the amount actually paid by the tortfeasor. *See, e.g., Botting v. Allstate Ins. Co.*, 1998 ME 58, ¶¶ 2, 7, 707 A.2d 1319, 1320, 1322; *Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶¶ 3–4, 12, 742 A.2d 482, 485–86. There is no Maine authority to support Jipson's contention that an insured injured by a single tortfeasor may recover a total that

is greater than the insured's UM coverage limit. In *Connolly v. Royal Globe Ins. Co.*, we found that section 2902 was amended in 1975 to include underinsured motorist coverage for the express purpose that an insured injured by an uninsured tortfeasor would not fare better than an insured injured by an underinsured tortfeasor. 455 A.2d 932, 935 (Me.1983). If Jipson had been injured by an insured motorist with coverage of $100,000, the same amount as his own insurance so that his UM coverage was not invoked, he would only be entitled to recover the tortfeasor's $100,000, not the greater amount of $150,000 that he now seeks to recover. We agree with Liberty Mutual that Jipson's interpretation of section 2902 as an "excess" model would result in disparate treatment because an insured motorist injured by an underinsured tortfeasor would achieve a better result than one injured by an uninsured tortfeasor. This model is clearly against our precedents. Such significant policy changes are best left to the discretion of the Legislature.

[¶ 10] Alternatively, Jipson argues that the policy language "amounts otherwise payable as damages" is ambiguous and should therefore be construed against the insurer. In evaluating an insurance contract, "the long-standing rule in Maine requires an evaluation of the instrument as a whole." *Me. Drilling & Blasting Inc. v. Insurance Co. of N. Am.*, 665 A.2d 671, 675 (Me.1995). "All parts and clauses [of an insurance policy] must be considered together that it may be seen if and how far one clause is explained, modified, limited or controlled by the others." *Id.* The meaning of language in an insurance policy is a question of law. *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869, 871. Contractual language is ambiguous if it is "reasonably susceptible of different interpretations." *Cambridge Mut. Fire.*

*Ins. Co. v. Vallee,* 687 A.2d 956, 957 (Me. 1996). Ambiguities in insurance contracts are to be construed in favor of the insured. *York Ins. Group v. Van Hall,* 1997 ME 230, ¶ 8, 704 A.2d 366, 369.

[¶ 11] Considered as a whole, the offset provision provides: "Any amounts otherwise payable for damages *under this coverage* shall be reduced...." Contrary to Jipson's contention that the language could reasonably be interpreted as an offset from amounts payable by verdict or from the agreed upon value of the claim, the offset clearly embodies the provision of section 2902 that grants insurers the right to reduce or offset the amount owed to an insured by the amount the insured recovers from the responsible party. We agree with Liberty Mutual that the plain language of "under this coverage" to modify the aforementioned phrase indicates the insurer's clear intent to offset coverage by damages paid. The phrase "under this coverage" explains, modifies, limits and controls the phrase "amounts otherwise payable for damages." The policy is not reasonably susceptible to any interpretation other than that the offset be taken from the $100,000 coverage limit, e.g. "the amounts otherwise payable for damages under this coverage," and is therefore unambiguous. *See Cambridge,* 687 A.2d at 957. Accordingly, we affirm the summary judgment ruling in favor of Liberty Mutual.

The entry is:

Judgment affirmed.