2010 ME 131

### Alberta L. FARTHING

v.

### ALLSTATE INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued: Oct. 6, 2010.

Decided: Dec. 9, 2010.

Steven D. Silin, Esq., Robert H. Furbish, Esq. (orally), Berman & Simmons, Lewiston, ME, for Alberta L. Farthing.

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, ME, for Allstate Insurance Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Alberta L. Farthing appeals from a judgment of the Superior Court (Hancock County, *Cuddy, J.*) declaring that Allstate Insurance Company, her uninsured motorist insurance carrier, was not obligated to pay her full policy limit following an accident because its liability was partially offset by a payment made by the tortfeasor. We affirm the judgment.

1. Allstate additionally paid Farthing the $5000 limit of her medical payments cover-

## I. BACKGROUND

[¶ 2] The parties filed an agreed statement of the facts, claims, and defenses in the Superior Court pursuant to M.R. Civ. P. 8(g). On August 24, 2007, Farthing was injured in a motor vehicle accident when her vehicle collided with a vehicle driven by Cory L. Openshaw; her resulting damages exceeded $125,000. Openshaw's negligence caused the accident. His insurer paid out the limit of his liability coverage to the parties injured in the accident in five equal shares; Farthing's share was $20,000. Farthing was insured by Allstate Insurance Company; her policy included uninsured motorist (UM) coverage with a $100,000 per person limit. Allstate paid her $80,000 under the policy, representing her $100,000 UM policy limit less the $20,000 paid to her by Openshaw's insurer.[1]

[¶ 3] Farthing contended in the Superior Court, and contends now, that the $20,000 paid by Openshaw reduced the total damages she could recover, not the amount she could recover under her UM coverage. She asserts that because those reduced damages still exceed her $100,000 UM policy limit, Allstate is obligated to pay her an additional $20,000 under her UM policy. Allstate contends that Openshaw's $20,000 payment reduced its UM coverage liability, and so it satisfied its obligation to Farthing by paying her $80,000, representing the "gap" between Openshaw's payment and Farthing's UM coverage limit.

[¶ 4] Treating the pleadings as a declaratory judgment action, the Superior Court agreed with Allstate and found that Allstate had fulfilled its obligation by pay-

age.

ing Farthing her UM policy limit, offset by Openshaw's payment. This appeal followed.

## II. DISCUSSION

[¶ 5] Farthing's central argument is that the governing statute[2] authorizes, but does not require, an offset against UM policy limits for payments made by a tortfeasor. Accordingly, she asserts that whether an offset exists in this case, and, if so, whether it applies against her total damages or her UM policy limit, is determined by examining the policy language as a matter of contract law.

[¶ 6] We recently reaffirmed that, "The goal of the UM statute was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party." *Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶ 12, 999 A.2d 930, 934 (quotation marks omitted); *see Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 8, 942 A.2d 1213, 1216. "The statute does not support double recovery or a windfall to the plaintiff." *Tibbetts*, 2010 ME 61, ¶ 12, 999 A.2d at 934. Contrary to Farthing's argument, "There is no Maine authority to support [the] contention that an insured injured by a single tortfeasor may recover a total that is greater than the insured's UM coverage limit." *Jipson*, 2008 ME 57, ¶ 9, 942 A.2d at 1216; *see Tibbetts*, 2010 ME 61, ¶ 12, 999 A.2d at 934 (stating that, in keeping with the goal of the UM statute, "any compensatory payments received by the plaintiff reduce the gap in coverage, and are offset against the judgment").

[¶ 7] In *Tibbetts*, we explicitly rejected Farthing's assertion that 24–A M.R.S. § 2902(4) (2009) authorizes but does not require an offset: "We have long held that insurers may offset the amount of coverage available in UM policies to the insured by the amount actually paid by the tortfeasor, . . . *and the statute in fact mandates this offset* . . . . [T]he statute specifically *mandates coverage that fills the gap left by an underinsured tortfeasor*. . . . " *Tibbetts*, 2010 ME 61, ¶¶ 15, 21, 999 A.2d at 934, 935 (emphasis added) (quotation marks omitted).

We explained how the mandatory offset is determined:

> In the first step, determining the gap, the court initially asks what amount the injured party would recover if the tortfeasor were insured to the amount of the injured party's UM coverage. If damages are less than the total policy limits . . . the injured party would recover his damages in full. If damages exceed the total limits, he would recover that total limit. After determining this recovery amount, the court then subtracts the amounts already paid by the tortfeasor or by insurers in settlement, and thereby determines the coverage gap.

*Id.* ¶ 18, 999 A.2d at 935. This approach is not subject to language variations that may exist in individual UM policies as Farthing suggests: "Because it is driven by the statute, we apply this [gap] approach *regardless of the offset language employed by the polic[y]*."[3] *Id.* ¶ 21, 999 A.2d at 935 (emphasis added).

---

2. The statute provides:

> 4. In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsi-

ble for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

24–A M.R.S. § 2902(4) (2009).

3. Insurers are not prohibited by this decision from offering additional protection to their

[¶ 8] Applying the *Tibbetts* formula to these facts, if Openshaw had been insured to the amount of Farthing's UM coverage, she would have recovered $100,000 from his insurer, given her damages. The amount actually paid by Openshaw, $20,000, is subtracted from that amount, leaving $80,000 as the coverage gap that Allstate was responsible to, and did, pay. Accordingly, Farthing in fact recovered $100,000, just as she would have had Openshaw's insurance been equal to her UM coverage. That result is consistent with the goal of the UM statute, in that it provides Farthing as the injured insured "the same recovery which would have been available had the tortfeasor been insured to the same extent." *Id.* ¶ 12, 999 A.2d at 934 (quotation marks omitted).

[¶ 9] Accepting Farthing's approach would produce a recovery of her $100,000 UM policy limit from Allstate, plus Openshaw's payment of $20,000, for a total recovery of $120,000—$20,000 more than she would recover if Openshaw had insurance equal to hers. Such a result is directly contrary to the goal of the UM statute because it produces a different, greater recovery than would have been available had the tortfeasor been insured to the same extent as Farthing.

[¶ 10] Because the Superior Court properly offset Openshaw's payment against Farthing's UM policy limit and then determined that Allstate was responsible to cover the resulting gap, its judgment reflects no error.

The entry is:

Judgment affirmed.

insureds through UM policies with limits higher than those generally mandated by 24-

A M.R.S. § 2902(2) (2009) or through excess coverage policies.