MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 109
Docket:        Som-15-11
Submitted
 On Briefs:    October 21, 2015
Decided:       July 14, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## ALBERTA GRAF

v.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

SAUFLEY, C.J.

[¶1]  Alberta Graf was injured when the car she was driving was struck from behind by an underinsured motorist.  She claimed uninsured/underinsured motorist (UM/UIM) coverage and medical payments coverage under two separate State Farm Mutual Automobile Insurance Company policies.   Graf and State Farm agreed to arbitrate the amount of damages caused by the accident, but to leave to the court the dispute regarding the extent of coverage, if any, available to Graf through the identified policies.  An arbitration panel determined that the accident caused Graf $378,000 in damages, $125,000 of which were identified as medical costs.  The Superior Court (Somerset County, *Mullen, J.*) determined that Graf had coverage under only one of the State Farm policies; deferred to the arbitration award as to her actual damages; established the amount owed by State Farm; and

2

reduced the arbitration award accordingly upon entry of judgment. We affirm the court's determination that only one of the policies covered Graf, but we vacate the court's decision regarding the amount due under that policy.[1]

## I. BACKGROUND

[¶2] The parties do not dispute that on August 4, 2005, Alberta Graf was operating her personal vehicle when it was struck from behind by a vehicle operated by another motorist who was fully responsible for causing the accident. At the time of the accident, that motorist had liability motorist coverage with Progressive Insurance Company in the amount of $50,000.

[¶3] Graf and her husband held two State Farm policies at the time of the accident. The first (Policy 1) was in Graf's husband's name; provided $1,000,000 of UM/UIM coverage; provided $100,000 of medical payments coverage; and did not cover Graf's vehicle. The UM/UIM section contained a provision entitled "When [UM/UIM Coverage] Does not Apply" that stated: "There is no coverage . . . for bodily injury to an insured [sustained] while occupying a motor vehicle owned by . . . you, your spouse or any relative if it is not insured for this coverage

---

[1] Graf also appeals from the court's denial of her request for prejudgment interest and other interest, costs, disbursements, and fees. We agree with the court's denial of prejudgment interest based on its conclusion that State Farm had already paid the policy limit and that there were no facts to show that State Farm acted in bad faith. *See* 14 M.R.S. § 1602-B (2015); *Simpson v. Hanover Ins. Co.*, 588 A.2d 1183, 1186 (Me. 1991). We are not persuaded by Graf's remaining arguments regarding her request for additional interest, costs, disbursements, and fees.

under this policy." The medical payments coverage under Policy 1 contained a similar provision. The second policy (Policy 2) was in Graf's name; provided $300,000 of UM/UIM coverage; provided $100,000 of medical payments coverage for medical expenses incurred for services furnished within three years of the accident; and covered Graf's vehicle. It provided: "The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage." It also provided that medical payments coverage would be denied "to the extent workers' compensation benefits are required to be payable."

[¶4] In October 2009, Graf, with State Farm's consent, settled her claim against the other motorist for his policy limits of $50,000 through Progressive Insurance. In September 2011, Graf filed a three-count complaint against State Farm in the Superior Court (Somerset County) seeking coverage from State Farm pursuant to both policies.

[¶5] On August 20, 2013,[2] as the parties were preparing to go to trial, Graf filed a motion for stay of proceedings due to an arbitration clause in the policies, which the court (*Nivison, J.*) granted. *See generally* Uniform Arbitration Act,

---

[2] Between 2011 and 2013 the parties prepared for trial, but in June 2013, Graf's attorney withdrew and new counsel was retained.

4

14 M.R.S. §§ 5927-5949 (2015). An arbitration hearing was held on March 18, 2014.

[¶6] Before the hearing, the parties signed an arbitration agreement. The agreement stated that the purpose of arbitration was to determine whether the accident caused Graf damages, and if so, in what amount. In the agreement, the parties left "jurisdiction" with the Superior Court to decide any issues relating to the amount of UM/UIM coverage available to Graf after the arbitration panel determined the amount of damages caused by the accident. Specifically, the agreement stated, "The court shall . . . retain jurisdiction to decide any issues relating to the amount of UM/UIM coverage available to Alberta Graf if there is a dispute regarding the available coverage after the panel award." The agreement did not specifically direct the arbitration panel or the court to determine the amount of medical expenses incurred within three years after the accident or the amount of expenses required to be payable by workers' compensation.

[¶7] The panel found that the accident caused Graf damages of $378,000. It determined that $125,000 of these damages were attributable to unspecified medical bills. After subtracting the $50,000 from the settlement with the other motorist, it reported that Graf's net damages totaled $328,000.

[¶8] On April 28, 2014, State Farm filed a motion in the Superior Court to reduce the panel damage award to available coverage. The court (*Mullen, J.*) held

a hearing on October 6, 2014. At the October 6 hearing, State Farm presented evidence to the court to show that some of Graf's medical bills resulting from the accident had been paid by workers' compensation or were for services obtained more than three years after the accident. The court granted the motion to reduce the panel damage award, determining that Graf had UM/UIM coverage pursuant only to her own policy—Policy 2; that she was not entitled to medical payments coverage pursuant to either policy; and that, because the available uninsured coverage on her policy totaled $300,000 and Graf had already received $50,000, she was entitled to a total of $250,000 from State Farm. Graf filed a timely notice of appeal. *See* 14 M.R.S. §§ 1851, 5945 (2015).

## II. DISCUSSION

A. Standard of Review

[¶9] Generally, pursuant to the Uniform Arbitration Act, an arbitration award can be modified by the Superior Court only for certain limited reasons, and our review of the court's action is similarly limited. *See* 14 M.R.S. § 5939; *Randall v Conley*, 2010 ME 68, ¶ 11, 2 A.3d 328. Here, however, the court did not question the accuracy of the panel's determination regarding damages, and its judgment did not constitute a modification of an arbitration decision. Nor do the parties challenge the amount of damages determined through arbitration. Rather, the parties agreed in the arbitration agreement to allow the court to "retain

6

jurisdiction to decide any issues relating to the amount of UM/UIM coverage available to Alberta Graf."

[¶10]  Thus, the court acted as the original adjudicator when it interpreted the policies and reduced the amount available to Graf based on its conclusion that Graf was only insured under one of the policies.  Therefore, our standard of review for confirmation or modification of an arbitration award pursuant to statute is not applicable here.  *See Randall*, 2010 ME 68, ¶ 11, 2 A.3d 328.

[¶11]  Instead, we review the trial court's interpretation of the insurance policies de novo.  *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 8, 38 A.3d 1267.  "If the language of [a] policy is unambiguous, we apply its plain meaning."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 13, 107 A.3d 621.  We also review the trial court's statutory interpretation de novo.  *Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786.

[¶12]  Graf argues that the court erred in determining (1) that Policy 1 excluded coverage for injury sustained in a vehicle not covered by the policy; (2) that the UM/UIM statute, 24-A M.R.S. § 2902 (2015), entitled State Farm to offset any judgment entered by the court with the $50,000 settlement Graf received from the other motorist, after the arbitration panel had already offset its award with the settlement amount; and (3) that the language in Policy 2 prevented her from

recovering both UM/UIM coverage and medical payments coverage. We address each of these arguments in turn.

B.     Policy 1

[¶13]   Graf argues that the court erred in determining that a valid "other-owned vehicle" exclusion in Policy 1 prevents her entitlement to $1,000,000 of coverage under the policy. Graf is included as an insured party under Policy 1; the question is whether the policy exclusion for accidents occurring in other-owned vehicles is valid and prevents coverage in this case.

[¶14]  Policy exclusions are enforced as long as they are unambiguous, do not conflict with the UM/UIM statute, and are not against public policy. *See Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1141-43 (Me. 1986). The "other-owned vehicle" exclusion in Policy 1 provides: "There is no coverage . . . for bodily injury to an insured while occupying a motor vehicle owned by or leased to you, your spouse or any relative if it is not insured for this coverage under this policy." We have previously considered almost identical "other-owned vehicle" exclusions, and have consistently determined that they do not conflict with the UM/UIM statute and are not against public policy. *See Estate of Galipeau v. State Farm Mut. Auto. Ins. Co.*, 2016 ME 28, ¶¶ 11-15, 132 A.3d 1190; *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 12 n.9, 87 A.3d 732; *cf. Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶¶ 22-24, 999 A.2d 930. Contrary to Graf's

8

assertion, this language unambiguously excludes coverage for injury that occurs in a vehicle not covered under the policy.[3]

[¶15]   Because the exclusion is not ambiguous, does not conflict with the UM/UIM statute, and is not against public policy, the exclusion is valid.  The court did not err in denying coverage under Policy 1.

C.   Offset of the Other Motorist's Payment

[¶16]   Graf argues that it was improper for the court to offset available coverage with the $50,000 of settlement proceeds because the arbitration panel had already offset the damages award with the same settlement amount.

[¶17]   "In the event of payment to any person under uninsured vehicle coverage . . . the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury . . . ." 24-A M.R.S. § 2902(4).  When the total damages are greater than the amount of UM/UIM coverage, we have previously determined that this language mandates that insurers offset *the amount of coverage available* in the UM/UIM policy, rather than the amount of damages incurred, by the amount actually paid by the tortfeasor.  *Farthing v. Allstate Ins. Co.*, 2010 ME 131, ¶ 7, 10 A.3d 667.  We have

---

[3]   Graf argues that because the policy language is found under a heading "When [UM/UIM Coverage] Does Not Apply," the exclusion only applies when one has not opted into UM/UIM coverage. She further argues that the language is ambiguous.  We are not persuaded.  If the provision only applied to an insured who was not entitled to UM/UIM coverage in the first place, there would be no reason to list the exclusion.  As the policy language is not reasonably susceptible to different interpretations, it is not ambiguous. *Cambridge Mut. Fire Ins. Co. v. Vallee*, 687 A.2d 956, 957 (Me. 1996).

explained that the reason for doing so is that "[t]he goal of the UM statute [i]s to provide an injured insured the same recovery [that] would have been available had the tortfeasor been insured to the same extent as the injured party." *Tibbetts*, 2010 ME 61, ¶ 12, 999 A.2d 930 (quotation marks omitted). Thus, it was proper to offset the amount of available *coverage* with the other motorist's payment, with the coverage then applied against the total damages determined by the arbitration panel.

[¶18] Mathematically, however, the offset applies only once. After the issue of medical payments coverage, addressed below, has been resolved, the court will determine the remaining damages and compare that to the total UM/UIM coverage available to determine how to offset the other motorist's payment. Because Graf has received $50,000 of the $300,000 she was entitled to pursuant to Policy 2's UM/UIM coverage, she will only be able to recover a maximum of $250,000 in UM/UIM coverage.

D. Policy 2

[¶19] Graf is an insured party under Policy 2, and she is entitled to UM/UIM coverage under that policy. The relevant question here is whether Graf is also entitled to any medical payments coverage under Policy 2, separate from UM/UIM coverage.

[¶20]  Pursuant to the policy, Graf is entitled to $100,000 of medical payments coverage "for services furnished within three years of the date of the accident."  That section also provides: "There is no coverage . . . to the extent workers' compensation benefits are required to be payable."  The UM/UIM coverage provides: "The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage."

[¶21]  The language at issue here—that "coverage shall be excess over and shall not pay again"—requires the medical payments coverage to be determined first and precludes the duplication of payment.  *See Ostransky v. State Farm Ins. Co.*, 566 N.W.2d 399, 401 (Neb. 1997) ("State Farm's position is clear: No insured can recover for medical expenses under the underinsured motorist coverage if such expenses have already been paid by the medical payment coverage.").  Thus, pursuant to the policy, any damages that fall within the $100,000 medical payments coverage should be paid first and remaining damages should be paid from the UM/UIM coverage.[4]

---

[4]  The math would work as follows.  Graf has up to $100,000 of medical payments coverage for medical costs that fall within the policy descriptions, and she has up to $250,000 in available UM/UIM coverage (policy limits of $300,000 less the other motorist's payment of $50,000).  *See Farthing v. Allstate*, 2010 ME 131, ¶ 7, 10 A.3d 667.  Graf's damages total $378,000, which is actually less than the potential maximum of her available payments and coverage of $400,000 ($100,000 in medical payments coverage and $300,000 from the combined payments of the other motorist and the UM/UIM coverage).  If all of the medical costs fall within the medical payments coverage, Graf would be entitled to $100,000 in medical payments coverage.  That would leave $278,000 in remaining damages to be paid from the other

[¶22]　　The arbitration panel did not determine the amount of medical expenses that were incurred within three years after the accident or whether any of these expenses were required to be payable by workers' compensation. Instead, the parties presented to the court the limited issue of whether the medical bills identified by the arbitration panel were covered by the medical payments provision because they fell within the period of coverage and were not offset by workers' compensation.[5] Because the court found the medical payments coverage not to be applicable, it did not reach this question, and the issue must be remanded to the Superior Court to determine how much, if any, of the $125,000 of arbitration-awarded medical expenses were incurred within three years after the accident and were not required to be paid by workers' compensation. After the court makes this determination, the parties should be able to calculate State Farm's remaining obligation. If not, pursuant to the original arbitration agreement, the

---

motorist and the UM/UIM coverage. Because she has received $50,000 from the other motorist and $100,000 from the medical payments coverage, her remaining damages of $228,000 could be fully covered by her UM/UIM coverage. She would receive $328,000 total from State Farm ($100,000 in medical payments and $228,000 in UM/UIM coverage) and $50,000 total from the other motorist, fully covering her total damages of $378,000.

   On the other hand, if none of the medical bills fall within the medical payments coverage, that would leave $378,000 in damages to be paid from the other motorist and the UM/UIM coverage. Thus, she would be entitled to a total of $250,000 from State Farm, augmenting the $50,000 from the other motorist, for a total of $300,000.

[5]　The accident occurred in 2005, and Graf underwent surgery in 2011, beyond the point of medical payments coverage. However, other medical costs may have been incurred within the three-year limit.

court will determine the amount of coverage available to Graf and enter judgment accordingly.

The entry is:

> Judgment affirmed in part. Remanded to the Superior Court for proceedings consistent with this opinion.

---

**On the briefs:**

N. Laurence Willey, Jr., Esq., Willey Law Offices, Bangor, for appellant Alberta Graf

James B. Main, Esq., Hoy & Main, P.A., Gray, for appellee State Farm Mutual Automobile Insurance Company