MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2017 ME 141
Docket:       Cum-16-408
Argued:       April 12, 2017
Decided:      June 29, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and HJELM, JJ.
Dissent:      JABAR, J.

MATTHEW J. WALLACE et al.

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

MEAD, J.

[¶1]   Matthew J. Wallace and Freja Folce[1] appeal from a summary judgment entered by the Superior Court (Cumberland County, *Mills, J.*) in favor of State Farm Mutual Automobile Insurance Company on their complaint seeking underinsured motorist (UM) payments from two policies issued by State Farm.  The plaintiffs contend that the court erred in finding that the tortfeasor who injured them in a motor vehicle accident was not an underinsured driver pursuant to Maine's UM statute, and therefore there was no gap in coverage requiring State Farm to pay UM benefits.  We affirm the judgment.

---

[1]  Freja Folce appears individually and as next friend of Zoe Folce.

## I.  FACTS AND PROCEDURE

[¶2]  For the purpose of deciding their respective motions for summary judgment, the parties stipulated to the following facts.  On September 29, 2011, Matthew Wallace was driving south on Route 26 in Woodstock; Freja Folce and her minor daughter Zoe were passengers in the vehicle.  Corey Hill, who was driving in the opposite direction in a vehicle owned by his employer, Twin Pines Construction, Inc., lost control while attempting to pass another vehicle, crossed the centerline, and collided with Wallace's vehicle.  The accident was caused by Hill's negligence.

[¶3]  Hill was acting in the course and scope of his employment when the accident occurred.  His Twin Pines vehicle was insured under a Safety Insurance Company policy that provided liability coverage of $50,000 per person and $100,000 per accident.  Twin Pines was also insured under an excess policy issued by Alterra Excess Surplus Insurance Company providing $2,000,000 in excess commercial auto liability coverage; however, the Alterra policy required Twin Pines to maintain $1,000,000 in primary coverage, and provided that Alterra was liable only "to the extent that it would have been held liable had the insured complied" with that requirement.  The policies issued to

Twin Pines by Safety and Alterra were the only policies providing coverage to Twin Pines and Hill for the accident.

[¶4]  The plaintiffs were insured under a State Farm policy covering their vehicle; that policy provided UM coverage of $100,000 per person and $300,000 per accident.  Wallace was also insured under a separate State Farm policy covering a different vehicle with the same UM coverage limits.

[¶5]  In August 2013, the plaintiffs filed complaints, which were later consolidated, against Twin Pines, Hill, and State Farm.  After the plaintiffs settled with Twin Pines, Alterra paid its excess policy limits—$1,000,000 to Wallace and $1,000,000 to Freja Folce.  Safety also paid its policy limits— $50,000 to Freja Folce and $50,000 for the benefit of Zoe.  All claims against defendants other than State Farm were then dismissed with prejudice.

[¶6]  The plaintiffs and State Farm agreed for purposes of summary judgment that the plaintiffs' aggregate damages exceeded $100,000—the per accident limit of Safety's primary policy—which would entitle the plaintiffs to UM benefits under the State Farm policies if State Farm were liable to pay UM benefits.  The parties agreed to resolve the legal issue of State Farm's liability by summary judgment.

4

[¶7]  In May 2016, State Farm moved for summary judgment and the plaintiffs moved for partial summary judgment.  By order dated August 8, 2016, the court denied the plaintiffs' motion and entered summary judgment for State Farm upon finding that "Defendant Hill was not an underinsured driver" at the time of the accident and therefore "State Farm is not required to pay."  The plaintiffs appealed.

## II.  DISCUSSION

[¶8]  Using the stipulated facts, we review the court's entry of summary judgment for State Farm de novo as a question of law.  *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 12, 157 A.3d 769.

[¶9]  Regarding the insurance coverage for the plaintiffs' damages, the first $100,000 has been paid by the Safety primary policy, and damages in the $1-3 million range have been paid by the Alterra excess policy.  The question we must resolve is whether the intermediate range from $100,000 to the limits of State Farm's UM liability represents a gap in coverage, meaning that Hill was an underinsured driver, or whether the $2.1 million in payments by Safety and Alterra, significantly exceeding State Farm's maximum UM liability, means that, as the trial court found, "Hill was not an underinsured driver."

[¶10]  The plaintiffs argue that for the first $1 million in damages Hill was underinsured, because the amount of their State Farm UM coverage exceeded the amount of his Safety primary liability coverage.  *See* 24-A M.R.S. § 2902(1) (2016) ("'[U]nderinsured motor vehicle' means a motor vehicle for which coverage is provided, but in amounts . . . less than the limits of the injured party's uninsured vehicle coverage.").  They assert that that fact is not altered by Alterra's excess coverage, which did not begin until their damages exceeded $1 million, and so "for any damages of $1,000,000 or less, [Alterra's] payments to Plaintiffs cannot be in any sense an offset from State Farm's uninsured motorist coverage amount."

[¶11]  State Farm's position is straightforward: the plaintiffs' maximum UM coverage is less than the $2.1 million that they received from Twin Pines's liability insurers; therefore, there is no underinsured motorist gap that State Farm is responsible to cover.  That position, adopted by the Superior Court, is supported by our decisions.

[¶12]  In construing 24-A M.R.S. § 2902 (2016), we have said that "[t]he goal of the UM statute was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party.  The statute does not support double recovery or a

6

windfall to the plaintiff." *Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶ 12, 999 A.2d 930 (citation and quotation marks omitted); *see Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 43, 107 A.3d 621; *Farthing v. Allstate Ins. Co.*, 2010 ME 131, ¶ 6, 10 A.3d 667. "There is no Maine authority to support the contention that an insured injured by a single tortfeasor may recover a total that is greater than the insured's UM coverage limit." *Farthing*, 2010 ME 131, ¶ 6, 10 A.3d 667 (alteration and quotation marks omitted). Accordingly, "we have . . . characterized UM insurance as gap coverage" that "fills the gap left by an underinsured tortfeasor." *Tibbetts*, 2010 ME 61, ¶¶ 17, 21, 999 A.2d 930 (quotation marks omitted).

[¶13] The UM statute provides that "[i]n the event of payment to any person under uninsured vehicle coverage . . . to the extent of such payment the insurer shall be entitled to the proceeds of *any settlement or recovery* from any person legally responsible for the bodily injury as to which such payment was made." 24-A M.R.S. § 2902(4) (emphasis added). In *Tibbetts*, we noted that section 2902(4) "explicitly requires" offsetting a tortfeasor's payment from a damages award, and concluded that the offset applied in that case even though the payor was an excess insurer, saying that "[i]n keeping with [the goal of the UM statute] *any* compensatory payments received by the plaintiff reduce the

gap in coverage, and are offset against the judgment." *Tibbetts*, 2010 ME 61,

¶¶ 11, 12, 999 A.2d 930 (emphasis added). Here, the $2 million paid by Alterra

is a "compensatory payment[] received by the plaintiff[s]," *id.* ¶ 12, and so that

payment must be offset.

[¶14] In *Farthing*, the plaintiff contended that $20,000 paid by the

tortfeasor's insurer "reduced the total damages she could recover, not the

amount she could recover under her UM coverage," which had a $100,000 per

person limit. 2010 ME 131, ¶¶ 2-3, 10 A.3d 667. We applied the formula set

out in *Tibbetts*[2] and concluded that

> [a]pplying the *Tibbetts* formula to these facts, if [the tortfeasor] had
> been insured to the amount of [the plaintiff's] UM coverage, [the
> plaintiff] would have recovered $100,000 from [the tortfeasor's]
> insurer, given [the plaintiff's] damages. The amount actually paid
> by [the tortfeasor], $20,000, is subtracted from that amount,
> leaving $80,000 as the coverage gap that Allstate was responsible
> to, and did, pay. Accordingly, [the plaintiff] in fact recovered
> $100,000, just as she would have had [the tortfeasor's] insurance
> been equal to [the plaintiff's] UM coverage. That result is
> consistent with the goal of the UM statute, in that it provides [the
> plaintiff] as the injured insured the same recovery which would

---

[2] In *Tibbetts*, we explained that a gap in coverage for which the injured insured's UM carrier is responsible, and the required offset of payments by the tortfeasor, is determined by "initially ask[ing] what amount the injured party would recover if the tortfeasor were insured to the amount of the injured party's UM coverage. If damages are less than the total policy limits . . . the injured party would recover his damages in full. If damages exceed the total limits, he would recover that total limit. After determining this recovery amount, the court then subtracts the amounts already paid by the tortfeasor or by insurers in settlement, and thereby determines the coverage gap." *Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶ 18, 999 A.2d 930.

have been available had the tortfeasor been insured to the same extent.

*Id.* ¶ 8 (quotation marks omitted).  Here, the plaintiffs have recovered far more from the tortfeasor's insurers than the maximum amount of UM coverage provided by the State Farm policies.  Accordingly, they have surpassed "the same recovery which would have been available had the tortfeasor been insured to the same extent."  *Id.* (quotation marks omitted).

[¶15]  We recently reaffirmed the *Farthing* process:

When the total damages are greater than the amount of UM/UIM coverage . . . [section 2902(4)] mandates that insurers offset the amount of coverage available in the UM/UIM policy, rather than the amount of damages incurred, *by the amount actually paid by the tortfeasor*.  We have explained that the reason for doing so is that the goal of the UM statute is to provide an injured insured the same recovery that would have been available had the tortfeasor been insured to the same extent as the injured party.  Thus, it was proper to offset the amount of available coverage with the other motorist's payment . . . .

*Graf v. State Farm Mut. Auto. Ins. Co.*, 2016 ME 153, ¶ 17, 149 A.3d 529 (emphasis added) (alterations, original emphases, citations, and quotation marks omitted).  Here, offsetting the amount of UM coverage available to the plaintiffs with Twin Pines' $2.1 million payment yields the trial court's result— "There is no gap in coverage and defendant State Farm is not required to pay."

The entry is:

Judgment affirmed.

_____

JABAR, J., dissenting.

[¶16]   I respectfully dissent because the plain language of Maine's UM statute, and our jurisprudence interpreting it, require that the plaintiffs be afforded the same recovery that they would have been entitled to had the Twin Pines vehicle been insured to the same extent as Wallace's UM coverage.

[¶17]   The automobile accident at the heart of this case produced disastrous consequences.  The plaintiffs, Wallace and Folce, allege in their pleadings that, as a result of the accident, they both suffered brain injuries and numerous lacerations.  In addition, Wallace alleges to have suffered a crushed right humerus, pulmonary contusions, and fractures to his radius, ulna, ribs, and both femurs.  According to her complaint, Folce lost the use of her left eye.

[¶18]   As the Court detailed, at the time of the accident, the Twin Pines vehicle was covered by a Safety Insurance Company liability policy with limits of $50,000 per person and $100,000 per accident.  The automobile was also covered by an Alterra excess policy with limits of $2,000,000.  Under the terms of the Alterra excess policy, Twin Pines was required to maintain a minimum of

$1,000,000 of primary liability coverage, and if it failed to maintain this coverage level, Alterra was "liable only to the extent that [Alterra] would have been held liable had [Twin Pines] complied" with the minimum limits provision. Since Twin Pines failed to comply with its obligation to maintain $1,000,000 of underlying liability insurance, Alterra was only responsible for damages in excess of $1,000,000. In effect, the Alterra excess policy contained a $1,000,000 deductible provision.[3] Wallace and Folce, on the other hand, were covered under two different State Farm policies, each providing for UM coverage in the amount of $100,000 per person and $300,000 per accident.

[¶19] Alterra settled with Wallace and Folce for its $2,000,000 policy limits, with each receiving $1,000,000. Presumably, Alterra believed that Wallace and Folce's damages totaled at least $3,000,000 because, by the terms of its policy, Alterra was liable only for damages exceeding the deductible amount of $1,000,000. Twin Pines' primary insurer, Safety Insurance Company, also settled with Wallace and Folce for its policy limits of $50,000 per person. Therefore, because Twin Pines did not maintain $1,000,000 of underlying insurance as was required pursuant to the Alterra excess policy,

---

[3] The Alterra policy provides that Alterra "shall only be liable under this Policy in the event of reduction or exhaustion of all the limits of the Underlying Insurance and any other valid and collectable insurance by payment in connection with claim(s)."

Wallace and Folce's recovery was limited to $2,100,000: $50,000 each from Safety and $1,000,000 each from Alterra.

[¶20] The plaintiffs now seek to recover under the UM provisions of the State Farm policies. Pursuant to 24-A M.R.S. § 2902(1) (2016), an underinsured vehicle is defined as "a motor vehicle for which coverage is provided, but in amounts . . . less than the limits of the injured party's uninsured vehicle coverage." As the Court correctly indicates, we have consistently noted that the purpose of the statute is to provide the injured party the *same recovery that would have been available had the tortfeasor been insured to the same extent* as the injured party. *See Farthing v. Allstate Ins. Co.*, 2010 ME 131, ¶ 6, 10 A.3d 667; *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 8, 942 A.2d 1213; *Tibbetts v. Me. Bonding & Cas. Co.*, 618 A.2d 731, 734 (Me. 1992). Although the Court correctly sets out the operative principles outlined in the aforementioned cases, it misapplies those principles to the facts this case.

[¶21] The facts of this case are unique because of the $1,000,000 deductible contained in the Alterra excess policy, and this Court has never applied the UM statute under like circumstances. The leading cases applying and enunciating the purpose of the UM statute have not dealt squarely with a situation where an excess policy is subject to a $1,000,000 deductible. All of

the cases cited by the Court deal with relatively straightforward setoffs of UM policy limits by amounts the injured party received from the tortfeasor or his insurance carrier under policies without deductibles. *See Graf v. State Farm Mut. Aut. Ins. Co.*, 2016 ME 153, ¶¶ 17-18, 149 A.3d 529 (reducing plaintiff's available UM coverage by amounts she received from the tortfeasor's insurer); *Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶¶ 11-12, 999 A.2d 930 (applying funds received by the plaintiff in a pre-trial settlement to reduce the verdict he obtained on his UM claims); *Jipson*, 2008 ME 57, ¶¶ 2, 11, 942 A.2d 1213 (reducing plaintiff's maximum recovery from his UM insurer by amounts the plaintiff received from the tortfeasor's insurer).

[¶22] The facts of this case demonstrate that the plaintiffs did not receive the "same recovery" that they would have been entitled to had the Twin Pines vehicle been insured to the "same extent" as Wallace's UM coverage. *See Farthing*, 2010 ME 131, ¶ 6, 10 A.3d 667 (quotation marks omitted). The math is simple. If the Twin Pines vehicle were insured to the "same extent" as the plaintiffs' UM coverage—i.e., $100,000 per person, $300,000 per accident— rather than the $50,000 per person limits of the Safety policy, then Wallace and Folce would have each recovered $1,100,000 ($100,000 from the Safety policy and $1,000,000 from the Alterra excess policy). However, since the Safety

policy limits were only $50,000 per person, Wallace and Folce recovered $1,050,000 ($50,000 from the Safety policy and $1,000,000 from the Alterra excess policy). Therefore, a $50,000 per plaintiff gap exists between Wallace and Folce's actual recovery and the recovery to which they would have been entitled had Twin Pines maintained primary coverage in the same amount as the State Farm UM policy limits. Together, the Safety policy and the Alterra excess policy created a donut hole, affording an injured individual coverage for the first $50,000 in damages followed by no coverage for the next $950,000 in damages, followed by coverage for damages in excess of $1,000,000.

[¶23] The Court concludes that because "the plaintiffs have recovered far more from the tortfeasor's insurers than the maximum amount of UM coverage provided by the State Farm policies," Wallace and Folce cannot prevail on their UM claims. Court's Opinion ¶ 14. Simply looking at the total Wallace and Folce received is not the proper analysis to apply here. Such a simplistic approach falls short of promoting the aims of the statute and is ill-suited given the unique facts of this case. Although Wallace and Folce have recovered sums in excess of the State Farm UM policy limits, they received *less* than what they would have been entitled to had the Twin Pines vehicle carried the same liability insurance as the plaintiffs' $100,000 UM policy limits.

14

[¶24] By overlooking the $1,000,000 deductible contained in the Alterra policy, the Court closes this donut hole and improperly credits Twin Pines for having insurance it never purchased. *See* Jeffrey E. Thomas, 4-24 *New Appleman on Insurance Law Library Edition* § 24.02(2)(a) (2011) ("A true excess policy does not broaden the underlying coverage. While an excess policy increases the *amount* of coverage available to compensate for a loss, it does not increase the *scope* of coverage." (footnote omitted)). If, for example, under the same circumstances Wallace and Folce's damages totaled $1,000,000—the equivalent of the deductible—and the Alterra excess policy was not triggered, it is undoubted that the Twin Pines vehicle would be deemed underinsured, and Wallace and Folce would be entitled to recover the difference between the $100,000 of UM coverage in the State Farm policy and the $50,000 Safety policy limits. *See Cobb v. Allstate Ins. Co.*, 663 A.2d 38, 40 (Me. 1995) ("Because Allstate's policy is excess, it has no applicability at all until the primary coverage is exhausted."). However, because Wallace and Folce's damages were so extensive that Alterra settled for the excess policy limits (notwithstanding the $1,000,000 deductible), Twin Pines is absolved of its obligation to provide the underlying coverage, and State Farm is relieved of its obligation to provide the UM coverage the plaintiffs paid for. Wallace and Folce are therefore left to bear

the brunt of this shortfall occasioned by the $1,000,000 deductible contained in the Alterra excess policy.

[¶25]   In conclusion, the plaintiffs Wallace and Folce are entitled to receive the difference between Twin Pines' primary coverage ($50,000 per person) and the limits of the State Farm UM policy ($100,000 per person). Therefore, I would vacate and enter a judgment in favor of Wallace and Folce for $50,000 each.

------------------

Steven D. Silin, Esq., and Robert H. Furbish, Esq. (orally), Berman & Simmons, P.A., Lewiston, for appellant Matthew J. Wallace

Michael F. Vaillancourt, Esq., Ainsworth, Thelin & Raftice, P.A., South Portland, for appellant Freja Folce

J. William Druary, Jr., Esq., and Gregory M. Patient, Esq. (orally), Marden, Dubord, Bernier & Stevens, PA LLC, Waterville, for appellee State Farm Mutual Automobile Insurance Company

Cumberland County Superior Court docket numbers CV-2013-367 and CV-2013-532
FOR CLERK REFERENCE ONLY