JABAR, J.,
dissenting.
[¶ 16] I respectfully dissent because the plain language of Maine’s UM statute, and our jurisprudence interpreting it, require that the plaintiffs be afforded the same recovery that they would have been entitled to had the Twin Pines vehicle been insured to the same extent as Wallace’s UM coverage.
[¶ 17] The automobile accident at the heart, of this case produced disastrous consequences. The plaintiffs, Wallace and.Fol-ce, allege in their pleadings that, as a result of the accident, they both suffered brain injuries and numerous lacerations. In addition, Wallace. alleges to have suffered a crushed right humerus, pulmonary contusions, and fractures to his radius, ulna, ribs, and both femurs. According to her complaint, Folce lost the use of her left eye.
[¶ 18] As the Court detailed, at the timfe of the accident, the Twin Pines vehicle was covered by a Safety Insurance Company liability policy with.limits, of $50,000 per person and $100,000 per accident. The automobile was also covered by an Alterra excess policy with limits of $2,000,000. Under the terms of the Alterra excess policy, Twin Pines was required to maintain a minimum of $1,000,000 of primary liability coverage, and if it failed to maintain this coverage level, Alterra was “liable only to the extent that [Alterra] would have been held liable had [Twin Pines] complied” with the minimum limits provision. Since Twin Pines failed to comply with its obligation to maintain $1,000,000 of underlying liability insurance, Alterra was only re *994 sponsible for damages in excess ' of $1,000,000. In effect, the Alterra excess policy contained a $1,000,000 deductible provision.[3] Wallace and Folce, on the other hand, were covered under two different State Farm policies, each providing for UM coverage in the amount of $100,000 per person and $300,000 per accident.
[¶ 19] Alterra settled with Wallace and Folce for its $2,000,000 policy limits, with each receiving $1,000,000. Presumably, Al-terra believed that Wallace and Folce’s damages totaled at least $3,000,000 because, by the terms of its policy, Alterra was liable only for damages exceeding the deductible amount of $1,000,000. Twin Pines’ primary insurer, Safety Insurance Company, also settled with Wallace and Folce for its policy limits of $50,000 per person. Therefore, because Twin Pines did not maintain $1,000,000 of underlying insurance as was required pursuant to the Alterra excess policy, Wallace and Folce’s recovery was limited to $2,100,000: $50,000 each from Safety and $1,000,000 each from Alterra.
[¶ 20] The plaintiffs now seek to recover under the UM provisions of the State Farm policies. Pursuant to 24-A M.R.S. § 2902(1) (2016), an underinsured vehicle is defined as “a motor vehicle for which coverage is provided, but in amounts ... less than the limits of the injured party’s uninsured vehicle coverage.” As the Court correctly indicates, we have consistently noted that the purpose of the statute is to provide the injured party the same recovery that would have been available had the toHfeasor been insured to the same extent as the injured party. See Farthing v. Allstate Ins. Co., 2010 ME 131, ¶ 6, 10 A.3d 667; Jipson v. Liberty Mut. Fire Ins. Co., 2008 ME 57, ¶8, 942 A.2d 1213; Tibbetts v. Me. Bonding & Cas. Co., 618 A.2d 731, 734 (Me. 1992). Although the Court correctly sets out the operative principles outlined in the aforementioned cases, it misapplies those principles to the facts this case.
[¶ 21] The facts of this case are unique because of the $1,000,000 deductible contained in the Alterra excess policy, and this Court has never applied the UM statute under like circumstances. The leading cases applying and enunciating the purpose of the UM statute have not dealt squarely with a situation where an excess policy is subject to a $1,000,000 deductible. All of the cases cited by the Court deal with relatively straightforward setoffs of UM policy limits by amounts the injured party received from the tortfeasor or his insurance carrier under policies without deductibles. See Graf v. State Farm Mut. Aut. Ins. Co., 2016 ME 153, ¶¶ 17-18, 149 A.3d 529 (reducing plaintiffs available UM coverage by amounts she received from the tortfeasor’s insurer); Tibbetts v. Dairyland Ins. Co., 2010 ME 61, ¶¶ 11-12, 999 A.2d 930 (applying funds received by the plaintiff in a pre-trial settlement to reduce the verdict he obtained on his UM claims); Jipson, 2008 ME 57, ¶¶ 2, 11, 942 A.2d 1213 (reducing plaintiffs maximum recovery from his UM insurer by amounts the plaintiff received from the tortfeasor’s insurer).
[¶ 22] The facts of this case demonstrate that the plaintiffs did not receive the “same recovery” that they would have been entitled to had the Twin Pines vehicle been insured to the “same extent” as Wallace’s UM coverage. See Farthing, 2010 ME 131, ¶ 6, 10 A.3d 667 (quotation marks omitted). The math is simple. If the Twin Pines vehicle were insured to the “same extent” as the plaintiffs’ UM coverage— i.e., $100,000 per person, $300,000 per acci *995 dent — rather than the $50,000 per person limits of the Safety policy, then Wallace and Folce would have each recovered $1,100,000 ($100,000 from the Safety policy and $1,000,000 from the Alterra excess policy). However, since the Safety policy limits were only $50,000 per person, Wallace and Folce recovered $1,050,000 ($50,-000 from the Safety policy and $1,000,000 from the Alterra excess policy). Therefore, a $50,000 per plaintiff gap exists between Wallace and Folce’s actual recovery and the recovery to which they would have been entitled had Twin Pines maintained primary coverage in the same amount as the State Farm UM policy limits. Together, the Safety policy and the Alterra excess policy created a donut hole, affording an injured individual coverage for the first $50,000 in damages followed 'by no coverage for the next $950,000 in damages, followed by coverage for damages in excess of $1,000,000.
[¶ 23] The Court concludes that because “the plaintiffs have recovered far more from the tortfeasor’s insurers than the maximum amount of UM coverage provided by the State Farm policies,” Wallace and Folce cannot prevail on their UM claims. Court’s Opinion ¶ 14. Simply looking at the total Wallace and Folce received is not the proper analysis to apply here. Such a simplistic approach falls short of promoting the aims of the statute and is ill-suited given the unique facts of this case. Although Wallace and Folce have recovered sums in excess of the State Farm UM policy limits, they received less than what they would have been entitled to had the Twin Pines vehicle carried the same liability insurance as the plaintiffs’ $100,000 UM policy limits.
[¶ 24] By overlooking the $1,000,000 deductible contained in the Alterra policy, the Court closes this donut hole and improperly credits Twin Pines for having insurance it never purchased. See Jeffrey E. Thomas, 4-24 New Appléman on Insurance Law Library Edition § 24.02(2)(a) (2011) (“A true excess policy does not broaden the underlying coverage. While an excess policy increases the amount of coverage available to compensate for a loss,, it does not increase the scope of coverage.” (footnote omitted)). If, for example, under the same circumstances Wallace and Folce’s damages totaled $1,000,000 — the equivalent of the deductible — and the Alterra excess policy was not triggered, it is undoubted that the Twin Pines vehicle would be deemed un-derinsured, and Wallace and Folce would be entitled to recover the difference between the $100,000 of UM coverage in the State Farm policy and the $50,000 Safety policy limits. See Cobb v. Allstate Ins. Co., 663 A.2d 38, 40 (Me. 1995) (“Because Allstate’s policy is excess, it has no applicability at all until the primary coverage is exhausted.”). However, because Wallace and Folce’s damages were so extensive that Alterra settled for the excess policy limits (notwithstanding the $1,000,000 deductible), Twin Pines is absolved of its obligation to provide the underlying coverage, and State Farm is relieved of its obligation to provide the UM coverage the plaintiffs paid for. Wallace and Folce are therefore left to bear the brunt of this shortfall occasioned by the $1,000,000 deductible contained in the Alterra excess policy.
[¶ 25] In conclusion, the plaintiffs Wallace and Folce are entitled to receive the difference between Twin Pines’ primary coverage ($50,000 per person) and the limits of the State Farm UM policy ($100,000 per person). Therefore, I would vacate and enter a judgment in favor of Wallace and Folce for $50,000 each.

. The Alterra policy provides that Alterra "shall only be liable under this Policy in the event of reduction or exhaustion of all the limits of the Underlying Insurance and any other valid and collectable insurance by payment in connection with claim(s).”